# UNITED STATES DISTRICT COURT FOR
# EASTERN DISTRICT OF MICHIGAN

The **CITY OF PONTIAC**, individually and on behalf of all others similarly situated,

     Plaintiff,

vs.

**BLUE CROSS BLUE SHIELD OF MICHIGAN**, a Michigan Nonprofit Healthcare Corporation; **ASCENSION HEALTH**, a Missouri Nonprofit Healthcare Corporation; Genesys Regional Medical Center; St. Mary's of Michigan Medical Center; St. Joseph Health System; Borgess Health d/b/a Borgess Medical Center; St. John Providence Health System d/b/a/ St. John Hospital & Medical Center; St. John Providence Health System d/b/a/ Southfield Providence Hospital; St. John Providence Health System d/b/a/ Providence Park Hospital – Novi; St. John Providence Health System d/b/a/ St. John Hospital - North Shore Campus; St. John Providence Health System d/b/a/ St. John Macomb - Oakland Hospital; St. John Providence Health System d/b/a/ St. John River District Hospital - East China; Botsford Hospital; Covenant HealthCare d/b/a Covenant Medical Center; Gratiot Community Hospital; Marquette General Health System d/b/a Marquette General Hospital; Metro Health d/b/a Metro Health Hospital; MidMichigan Health d/b/a MidMichigan Medical Center – Midland; Munson Healthcare d/b/a Munson Medical Center; Sparrow Health System d/b/a Sparrow Hospital; William Beaumont Hospital - Royal Oak; William Beaumont Hospital – Troy; and William Beaumont Hospital - Grosse Pointe,

     Defendants.

Case No.:  11-cv-10276

Hon. Denise Page Hood

# MOTION FOR APPOINTMENT OF SOMMERS SCHWARTZ, P.C. AS INTERIM CLASS COUNSEL FOR THE NON-BLUE CROSS DIRECT PURCHASER CLASS

Plaintiff, the City of Pontiac, by and through undersigned counsel hereby moves for appointment of its counsel, Sommers Schwartz, P.C., as interim class counsel for the non-Blue Cross direct purchaser class.  In support of its Motion, Plaintiff relies on the accompanying brief and memorandum of law.

Dated:  February 17, 2011

Respectfully submitted,

s/ Jason Thompson (P47184)
Andrew J. Kochanowski (P55117)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075-1100
(248) 355-0300
jthompson@sommerspc.com
akochanowski@sommerspc.com

Lance Young (P51254)
LAW OFFICE OF LANCE C. YOUNG
43311 Joy Road #244
Canton, MI 48187
(734) 446-6932
younglcy@hotmail.com

Edward A. Wallace, Esq.
WEXLER WALLACE LLP
55 West Monroe St.
Suite 3300
Chicago, IL 60603
(312) 346-2222
eaw@wexlerwallace.com

Eric S. Goldstein (P45842)
JOHNSTON, SZTYKIEL, HUNT, GOLDSTEIN,
FITZGIBBONS & CLIFFORD
1301 W. Long Lake Road, Suite 250
Troy, MI 48098
(248) 641-1800
egoldstein@jshlawmi.com

Robert Anthony Alvarez (P66954)
AVANTI LAW GROUP, PLLC
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com

ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT FOR**
**EASTERN DISTRICT OF MICHIGAN**

The **CITY OF PONTIAC**, individually and on behalf of
all others similarly situated,

      Plaintiff,

vs.

**BLUE CROSS BLUE SHIELD OF MICHIGAN**, a
Michigan Nonprofit Healthcare Corporation;
**ASCENSION HEALTH**, a Missouri Nonprofit
Healthcare Corporation; Genesys Regional Medical
Center; St. Mary's of Michigan Medical Center; St.
Joseph Health System; Borgess Health d/b/a Borgess
Medical Center; St. John Providence Health System d/b/a/
St. John Hospital & Medical Center; St. John Providence
Health System d/b/a/ Southfield Providence Hospital; St.
John Providence Health System d/b/a/ Providence Park
Hospital – Novi; St. John Providence Health System d/b/a/
St. John Hospital - North Shore Campus; St. John
Providence Health System d/b/a/ St. John Macomb -
Oakland Hospital; St. John Providence Health System
d/b/a/ St. John River District Hospital - East China;
Botsford Hospital; Covenant HealthCare d/b/a Covenant
Medical Center; Gratiot Community Hospital; Marquette
General Health System d/b/a Marquette General Hospital;
Metro Health d/b/a Metro Health Hospital; MidMichigan
Health d/b/a MidMichigan Medical Center – Midland;
Munson Healthcare d/b/a Munson Medical Center;
Sparrow Health System d/b/a Sparrow Hospital; William
Beaumont Hospital - Royal Oak; William Beaumont
Hospital – Troy; and William Beaumont Hospital - Grosse
Pointe,

      Defendants.

Case No.: 11-cv-10276

Hon. Denise Page Hood

**BRIEF IN SUPPORT OF THE CITY OF PONTIAC'S MOTION FOR APPOINTMENT
OF SOMMERS SCHWARTZ, P.C. AS INTERIM CLASS COUNSEL FOR THE
<u>NON-BLUE CROSS DIRECT PURCHASER CLASS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ................................................................................................ 2

    a.      The City of Pontiac's Case .................................................................... 2

    b.      The Government Action and the Related Class Actions ....................... 4

    c.      Consolidation and Class Counsel Motions .......................................... 6

III.    THE COURT SHOULD APPOINT SOMMERS SCHWARTZ AS INTERIM
       LEAD COUNSEL FOR THE NON-BLUE CROSS DIRECT PURCHASER
       CLASS ............................................................................................................. 7

    a.      Standards for Appointing Interim Class Counsel ................................. 7

    b.      Sommers Schwartz is "best able to represent the interests of the class" ............... 8

    c.      Each of the Requirements of Rule 23(g)(1) support the Appointment of
        Sommers Schwartz as Interim Class Counsel for the Non-Blue Cross
        Direct Purchaser Class ......................................................................... 9

II.     CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

Bradburn Parent/Teacher Store, Inc. v. 3M, 2004 WL 414047 (E.D. Pa.).....................................8

In re Cardizem CD Antitrust Litigation, 332 F.3d 896 (6th Cir. 2003)....................................3

In re Cathode Ray Tube (CRT) Antitrust Litigation, 2008 WL 2024987 at *3-4
(N.D. Cal.)............................................................................................................................7, 9, 13

In re Delphi ERISA Litig., 230 F.R.D. 496, 498 (E.D. Mich. 2005)................................................8

In re Packaged Ice Antitrust Litig., 2009 U.S. Dist. LEXIS 45492 at *28, *32
(E.D. Mich. 2009) ........................................................................................................................8

Nowak v. Ford Motor Co., 240 F.R.D. 355, 360-61 (E.D. Mich. 2006) ........................................8

**Statutes**

MCL §445.784 ..................................................................................................................................3

**Rules**

Fed.R.Civ.P. 23(g)(1)(A) ..................................................................................................................8

Fed.R.Civ.P. 23(g)(1)(D) ..................................................................................................................7

Fed.R.Civ.P. 23(g)(3)........................................................................................................................1

## I.  INTRODUCTION

Plaintiff, the City of Pontiac, submits this motion requesting appointment of its counsel, Sommers Schwartz, P.C., as interim class counsel for the non-Blue Cross direct purchaser class. The City of Pontiac is one of the largest purchasers of hospital services in the State and has brought claims against Blue Cross Blue Shield of Michigan ("Blue Cross"), Ascension Health, and 21 Michigan hospitals (the "Hospitals") on behalf of all similarly situated direct purchasers to recover for alleged *per se* violations of the antitrust laws.  In particular, Plaintiff alleges that the Hospitals individually and collectively agreed and combined with Blue Cross to charge Blue Cross' competitors more for hospital services than Blue Cross' subscribers and network participants pay by fixed amounts ranging from 10 to 39 percent.

While the City of Pontiac's case shares some factual similarities with the other cases currently on file, these actions are different.  For example, the City of Pontiac is *not* challenging Blue Cross' use of most favored nation clauses generally as a means of obtaining discounts and favorable pricing for Blue Cross' subscribers and network participants.  Nor has Plaintiff alleged claims against Blue Cross for monopolization or attempted monopolization.  These substantive differences -- along with the addition of 22 Defendants not named in the other cases -- make the City of Pontiac's case a very different lawsuit to litigate than the actions brought by the government and the other class plaintiffs.

As explained below, the City of Pontiac's chosen counsel, Sommers Schwartz, has spent considerable time, including extensive research, investigation and review of reams of data that led to the filing of this lawsuit, which alleges claims that are different from any other private plaintiff.  Plaintiff respectfully submits that this careful work, before the filing of the complaint, is one of the several factors that makes Sommers Schwartz an appropriate choice for Interim Class Counsel under Fed.R.Civ.P. 23(g)(3).  It is this precise effort that will lead to the early and

efficient coordination of this action with the government action and the other class cases already pending in this Court and that will result if Sommers Schwartz is appointed as Interim Class Counsel for the non-Blue Cross direct purchaser class.[1]   Once that appointment has been made, the parties will have no difficulty negotiating the briefing and discovery protocols that will be needed to ensure that all of the cases before the Court proceed in a coordinated and efficient manner.

## II.  BACKGROUND

### a.    The City of Pontiac's Case

The City of Pontiac filed suit on January 21, 2011.  The City's lawsuit is substantively different than the cases filed by the government (10-cv-14155), the *Shane Group* (10-cv-14360), the *Michigan Regional Council of Carpenters* (10-cv-14887), and plaintiff *Steele* (11-cv-10375).

*First*, Plaintiff's case challenges one unique term of the agreements Blue Cross signed with 23 Hospitals that requires those Hospitals to charge Blue Cross' competitors more than Blue Cross subscribers and network participants pay by fixed amounts.[2]   These agreements were described in the government's complaint as "MFN-Plus" contracts and Plaintiff adopted that terminology for the sake of consistency, but the term "MFN-Plus" incorporates two completely

---

[1] Counsel for the various plaintiff groups have been in discussions with counsel for Blue Cross about the possibility of holding a Rule 26(f) conference, but those discussions broke down because: (1) it is futile to try to move ahead without the participation of all of the Hospital Defendants (several of which have not yet filed appearances); and (2) without lead counsel appointments having been made, it is unclear who has authority on the plaintiffs' side to negotiate what aspects of the case.  *See* February 15, 2011 letter from Blue Cross's counsel.

[2] The government identified 23 Hospitals that signed agreements like these with Blue Cross.  On January 20, 2011, the DOJ wrote to Blue Cross requesting copies of the contracts Blue Cross signed with *33 additional hospitals*, including Henry Ford Health System (7 hospitals), McLaren Health System (6 hospitals) and Oakwood Healthcare (4 hospitals).  *See* DOJ letter (Dckt. 20-4, attached as Exhibit 3 to Blue Cross' Motion to Stay Discovery Pending a Ruling on Defendant's Motion to Dismiss.  Some or all of these additional hospitals may be added to the City of Pontiac's lawsuit once the contracts have been produced.

different economic concepts: (i) the most favored nation clause (challenged by the government and the other class plaintiffs); and (2) the "plus" component, which Plaintiff here challenges and alleges is a naked restraint of trade.

By design, the plus agreements artificially inflate the prices that Blue Cross' competitors pay at each of the 23 Hospitals named in Plaintiff's Complaint.  Said another way, these agreements drive up the cost of obtaining Hospital services to all *non-Blue Cross purchasers* by amounts ranging from 10 to 39 percent. [3]  These kinds of agreements are *per se* violations of the antitrust laws and they have no redeeming or pro-competitive purpose.  *See*, *e.g.*, *In re Cardizem CD Antitrust Litigation*, 332 F.3d 896 (6th Cir. 2003) ("a *per se* rule is applied when the practice facially appears to be one that would always or almost always tend to restrict competition or decrease output")(citations omitted). *See also* MCL §445.784 ("It is the intent of the legislature that in construing all sections of [the Michigan Antitrust Reform Act] the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations").

*Second*, Plaintiff properly named the Hospitals as defendants and intentional participants in Blue Cross' illegal combination.[4]  The inclusion of the Hospital Defendants was not incidental; the City of Pontiac pays millions of dollars to these providers every year and at overcharges ranging from 10 to 39 percent the City's claims against the Hospitals for both

---

[3] According to internal Blue Cross documents cited in the government's complaint, the purpose of these MFN-Plus agreements was to prohibit "better discounts to be negotiated with [other] payors" and to "keep Blue lock on U.P." *See*, *e.g.*, Government Cpt. at ¶68, 57.

[4] Plaintiff also named Ascension Health as a defendant and co-conspirator because "Blue Cross' contract with Ascension requires that Ascension's hospitals charge Blue Cross' competitors at least 10% more than the hospitals charge Blue Cross.  Blue Cross agreed to pay Ascension higher rates for hospital services, resulting in Blue Cross paying an additional $2.5 million annually for this MFN-plus."  Government Cpt. (Dckt. 1) at ¶39.c.

3

antitrust damages and disgorgement are very significant.  *See* Pontiac Cpt. at ¶20-40 alleging direct payments to each of the Hospital Defendants and Count III asserting claims for unjust enrichment.  While plaintiff *Steele* may have standing to sue *one* of the Hospitals in question, he has chosen not to name St. John or assert claims for unjust enrichment.[5]  The City of Pontiac, in contrast, has paid for hospital services at nearly every hospital in the State and expects to continue doing so, making the City and its counsel Sommers Schwartz the best possible representatives to protect and serve on behalf of the class of non-Blue Cross direct purchasers.

*Finally,* the City of Pontiac is not challenging Blue Cross' monopoly or use of most favored nation clauses as a method of securing discounts and deeply reduced prices with providers.[6]  That is a much different case the City of Pontiac has chosen to pursue (see discussion below).  Moreover, the government and the other class plaintiffs already are pursuing those claims.

**b.    The Government Action and the Related Class Actions**

On October 18, 2010, the United States Department of Justice and the Michigan Attorney General filed a lawsuit against Blue Cross in the United States District Court for the Eastern District of Michigan alleging that the cost of commercial health insurance has been artificially

---

[5] Specifically, plaintiff *Steele* alleges that he was "hospitalized three times in 2010: on June 23-24 and August 11-12 at Henry Ford West Bloomfield Hospital, and on August 20-21 at St. John Hospital."  *Steele* Cpt. at ¶13.  The other class plaintiffs allegations are even more circumspect; these plaintiffs -- ***who likely are all Blue Cross network participants*** -- aver only that they "purchased, paid for, or became obligated to pay for Healthcare Services at a rate contracted for by BCBSM or one of its insurer competitors directly from one or more of the hospitals with which BCBSM had an agreement that contained an MFN or its equivalent." *Shane Group* Cpt. at ¶13.  *See also Michigan Council of Carpenters* Cpt. at ¶22-23 (same).

[6] Plaintiff *Steele* suggests in his Motion for Consolidation (Dckt. 4) that the City of Pontiac's case should be consolidated along with the other class cases into "a single consolidated amended complaint that would make the claims in the four cases identical."  Mot. at p. 5. Plaintiff opposes this approach.

inflated in Michigan by Blue Cross' use of most favored nation clauses in many of its participating hospital agreements.   The government seeks to enjoin the operation of these agreements under Section 1 of the Sherman Act and the comparable provisions of the Michigan Antitrust Reform Act; however, the government is not seeking damages.

The basic theory of the government's case is that Blue Cross' use of most favored nation clauses has resulted in virtually everyone in the State paying more for hospital services and health insurance than they otherwise would have.   While the government pled these claims solely as a violation of Section 1 of the Sherman Act (unlawful contract or combination in restraint of trade), the claim also is well-suited to resolution under Section 2 of the Sherman Act, and, indeed, monopolization and attempted monopolization claims have been expressly asserted in the complaints filed by the *Shane Group* and plaintiff *Steele*.[7]

As explained in the government's recently filed Response to Blue Cross' Motion to Dismiss (Dckt. 16), "MFNs are subject to a fact-dependent "rule of reason" analysis, which looks to the ultimate effect that Blue Cross' MFN's are likely to have on competition."  *Id.* at 2. To prove such anticompetitive effects, the government, and by implication each of the other class plaintiffs, will have to show that Blue Cross' most favored nation clauses have actually restrained trade in "two product markets" (*Id.* at 8) and "17 specific geographic markets" (*Id.* at 12).   To say it another way, "because this is a rule of reason case, it may be necessary to take discovery from *all* of the hospitals in each separate market …, not only to establish the parameters of the product and geographic markets, but also to determine the *impact* of the MFNs within each relevant market."   Blue Cross' Motion to Stay Discovery (Dckt. 20) at 2-3, fn. 4.

---

[7] In proposing the filing of a consolidated complaint, Plaintiff assumes that the *Michigan Regional Council of Carpenters* intends to now pursue monopolization and attempted monopolizations against Blue Cross as well.

Plaintiff's claim and relevant market(s) in contrast is limited to the discrete services and overcharges imposed at the 23 Hospitals.

Additionally, the plaintiffs in the other class actions specifically allege that the people that have been injured by Blue Cross' monopoly and use of most favored nation clauses are "all persons or entities … who purchased or paid for hospital services at a rate contracted for by BCBSM or one of its insurer competitors directly from a hospital with which BCBSM entered into an agreement that included a "most favored nation" clause or its equivalent…" *Shane Group* Cpt. (Dckt. 1) at ¶18.[8]  This putative class includes the *Shane Group* and *Michigan Council of Carpenters* along with tens of millions of other Blue Cross subscribers and network participants.   Under Plaintiff's theory – that 23 Hospitals agreed to charge Blue Cross' competitors more for hospital services by fixed percentages ranging from 10 to 39 percent – the injuries and damages sustained by the Blue Cross subscribers and network participants (including the *Shane Group* and *Michigan Council of Carpenters*) are irrelevant.

**c.     Consolidation and Class Counsel Motions**

On January 7, 2011, before the City of Pontiac even filed suit, the *Shane Group* and *Michigan Regional Council of Carpenters* moved under Fed.R.Civ.P. 42(a) to consolidate their cases into a single proceeding.[9]  Plaintiff *Steele* filed its suit on January 28, 2011 and on

---

[8] *See also Michigan Council of Carpenters* Cpt. (Dckt. 1) at ¶81 (same); *Steele* Cpt. (Dckt. 1) at ¶17 (same).

[9] *See* the joint Motion for Consolidation, Appointment of Interim Class and Liaison Counsel, and Initial Pretrial Schedule filed by the *Shane Group* (Dckt. 13) and the *Michigan Regional Council of Carpenters* (Dckt. 7).   While the City of Pontiac does not oppose consolidation of the other class actions, Plaintiff believes its case likely is too dissimilar to warrant being consolidated with them.

February 9, 2011, plaintiff *Steele* joined in the other class plaintiffs' request for consolidation.[10] Plaintiffs in each of the other class cases propose to unite under a single consolidated amended complaint, and several competing attorneys and firms also have moved for appointment as interim lead counsel of the case once they have been consolidated.

The City of Pontiac takes no position regarding the appointment of interim class counsel in the other class cases to the extent they seek to represent their respective class (and not the class the City of Pontiac seeks to represent).  If, however, the cases are consolidated, and the City of Pontiac's case is consolidated with the other class cases, any consolidation order should detail the roles and responsibilities of counsel along with a clear statement of how the work and costs of litigating each parties' claims should be allocated (which should include appointment of Sommers Schwartz as counsel for the class that the City of Pontiac seeks to represent).  *See* Fed.R.Civ.P. 23(g)(1)(D). *See also In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2008 WL 2024987 at *3-4 (N.D. Cal.)(listing the duties and responsibilities assigned to interim class counsel).

### III. THE COURT SHOULD APPOINT SOMMERS SCHWARTZ AS INTERIM LEAD COUNSEL FOR THE NON-BLUE CROSS DIRECT PURCHASER CLASS

#### a.      Standards for Appointing Interim Class Counsel

Fed.R.Civ.P. 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Section 10.22 of the *Manual for Complex Litigation (Fourth)* recommends that appointment of interim class counsel occur as early as practical in the litigation to achieve efficiency and economy without jeopardizing the fairness of the adversarial process.  Few decisions by the court

---

[10] *See* Plaintiff *Steele's* Motion for Consolidation and Appointment of Interim Lead and Liaison Counsel (Dckt. 4).

in complex litigation are as difficult or as sensitive as the appointment of interim class counsel. *Id*, at §10.224.

If more than one applicant seeks appointment as class counsel, the court should appoint the applicant "best able to represent the class." Fed.R.Civ.P. 23(g)(2).  *See also In re Packaged Ice Antitrust Litig.*, 2009 U.S. Dist. LEXIS 45492 at *28, *32 (E.D. Mich. 2009).  This determination is typically driven by the nature of the causes of action alleged.  *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 360-61 (E.D. Mich. 2006) (*citing* Howard B. Newberg and Alba Conte, *Newberg on Class Actions*, § 9-35 at 9-97 (3d ed. 1992)).  In addition, the Court is obligated by the Federal Rules of Civil Procedure to consider:

> (i)  the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1)(A); *In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005).  In the instant case, all of the above factors strongly support the appointment of Sommers Schwartz as interim class counsel for the non-Blue Cross direct purchaser class.

### b.  Sommers Schwartz is "best able to represent the interests of the class"

As explained in Sections II.a. and II.b. above, Plaintiff's case is very different from the government action and the other class cases currently on file.  These substantive differences – along with the possibility that a conflict may develop in the litigation between the interests of the tens of millions of Blue Cross subscribers and network participants on the one hand, and the non-Blue Cross direct purchasers on the other hand – make the appointment of separate class counsel advisable, and probably required.  *See*, *e.g.*, *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 414047 (E.D. Pa.)(declining to certify an antitrust class that included both brand-name purchasers seeking overcharge damages and private label purchasers seeking to recover lost

profits); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2008 WL 2024987 (N.D. Cal.)(appointing separate counsel to represent direct vs. indirect purchasers). As the firm who brought these concerns to the attention of the Court, Sommers Schwartz already has demonstrated its ability and commitment to protect the interests of the non-Blue Cross direct purchaser class.

The City of Pontiac's retention of Sommers Schwartz also should be given considerable weight. The City of Pontiac's financial stake in this litigation is very significant; it spends more than $18 million a year on hospital services and related medical care and it does business, and expects to continue doing business, making the City and its counsel Sommers Schwartz the best possible representatives to protect and serve on behalf of the class of non-Blue Cross direct purchasers.

      c.     **Each of the Requirements of Rule 23(g)(1) support the Appointment of Sommers Schwartz as Interim Class Counsel for the Non-Blue Cross Direct Purchaser Class**

         i.  **The work counsel has done in identifying or investigating potential claims in the action**

Plaintiff's legal theory, the putative class definition, and Plaintiff's claims against Ascension Health and the 21 Hospitals named in the Complaint are all the work of Plaintiff's counsel. Plaintiff's counsel examined the press releases from the Department of Justice and Michigan Attorney General's office along the evidence described in the government's complaint in October 2010, but it was the experience and extensive research and investigation of Plaintiff's counsel that ultimately led to the City of Pontiac filing suit three months later in January 2011. Sommers Schwartz has a significant commercial and class action litigation practice and the firm represents a number of self-insured clients and insurance companies in other healthcare-related matters pending in state and federal courts throughout the United States. For example, Sommers

Schwartz has represented the State of Michigan through the Office of Financial and Insurance Regulation in healthcare price-gouging litigation for the past five years, including actively filing third party payor class actions and advising them on their claim and settlement rights.  The firm similarly represents self-insured municipalities Wayne County, Calhoun County, Oakland County, and City of Detroit, and has filed a healthcare fraud lawsuit for Sterling Heights and Oakland County against drug wholesaler McKesson Corporation in the United States District Court for the District of Massachusetts.  *Oakland County, et. al. v. McKesson Corporation*, Case No. 09-cv-10843.

Before this suit was filed, Plaintiff's counsel consulted with many of those clients and evaluated the effects that Defendants' most favored nation clauses and plus agreements have had on different types of purchasers and businesses.  The data produced by the City of Pontiac alone required an immense investment of time to review and Plaintiff's counsel also spent considerable time culling through materials and public records at the Michigan Office of Financial and Insurance Regulation looking for information about Blue Cross' pricing and contracting strategies, researching applicable laws, and extensively examining the reports of Aetna's decision to drop out of the small-group insurance business in Michigan.

Having concluded that the plus agreements are viable claims separate and apart from the most favored nation clauses, and that the damages accruing from each such violation are separate and distinct, Plaintiff's counsel and the City of Pontiac chose to reign in the City's case to avoid the costs and complexity of pursuing an "unwieldy" claim.  *See* Jan. 18, 2011 letter from Blue Cross to the DOJ at p. 4-5 (Dckt. 20-3), attached as Exhibit 2 to Blue Cross' Motion to Stay Discovery Pending a Ruling on Defendant's Motion to Dismiss ("It is axiomatic that a plaintiff is the master of his or her complaint and by choosing to plead such an unwieldy and far-reaching complaint, the government must come forward with proof, if it survives dismissal").

10

Additionally, the theory developed by Plaintiff's counsel includes a claim for unjust enrichment and "exposes each hospital with an MFN [plus] to joint and several liability for the full amount of any damages…" Blue Cross' Motion to Dismiss the government Complaint (Dckt. 12) at p. 3 fn. 8.

Careful work -- before the complaint was filed -- demonstrates the merits of this Motion.

### ii. Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action

Sommers Schwartz and the team of attorneys assembled to help litigate this case all have worked together before and have decades of experience litigating and leading class actions and other complex cases. Sommers Schwartz is one of Michigan's largest litigation firms with over forty trial attorneys, many of whom are consistently selected as among the Best Lawyers in America. *See* attached Sommers Schwartz firm resume and  www.sommerspc.com.

The lead attorney in this case will be Jason J. Thompson. Mr. Thompson is a nationally board certified trial attorney and he chairs the firm's Complex Litigation Department. His formidable breadth of experience in complex litigation has merited his selection to Michigan Super Lawyers (Class Actions) every year the award has been conferred since 2006. He practices in a wide variety of relevant subject areas, including: defective pharmaceutical drugs and devices, healthcare fraud, pharmaceutical price gouging, consumer rights, and antitrust. He represents consumers and institutional clients – such as municipalities, healthcare plans and unions – in all those areas and Mr. Thompson is regularly appointed by courts to serve as lead counsel in class actions and MDLs.

For example, Mr. Thompson has been appointed Class Counsel by District Court Judges in the Eastern District of Michigan. *Stanley v. United States Steel Corporation*, No. 04-74654; *Snow v. Atofina Chemical, Inc.*, No. 01-72648. He is currently serving as Lead Class Counsel in

an $11.3 million dollar national class action settlement pending before Judge Murphy in *Doe v. Cin-Lan, Inc.*, No. 08-cv-12719, and Co-Lead Class Counsel in a consumer class action pending before Judge Tarnow. *Exclusively Veterinary Cats Hospital, P.C. v. Anesthetic Vaporizer Services, Inc.*, No. 10-10620. Mr. Thompson and Sommers Schwartz are currently co-Lead Class Counsel in the PSLRA action pending in this Court before Judge Cook. *Haase v. Frank J. Bluestein, et al*, No. 08-10927. Furthermore, Mr. Thompson has also been appointed co-Lead Class Counsel in Wayne County case *Regina v. Comcast of Detroit, Inc.*, No. 07-723009.

Mr. Thompson has also been appointed to leadership positions in several MDL cases involving healthcare fraud and consumer protection claims in District Courts outside of Michigan. These actions include: *In Re: Ditropan XL Antitrust Litigation*, MDL No. 1761; *In Re: Bextra/Celebrex Sales and Marketing,* MDL No. 1699; *In Re Tricor Indirect Purchaser Antitrust Litigation*, District Court for Delaware, Case No. 05-360; *Northstar Education Finance, Inc. Contract Litigation*, MDL No. 1990; and *Amgen Off Label Marketing Litigation,* MDL No 1934.

In 2009, Mr. Thompson was appointed as one of the bellwether trial counsel by Judge Fallon in *In Re: Vioxx Sales and Marketing Litigation*, MDL No. 1657.

In addition to Jason Thompson, the head of Sommers Schwartz' Commercial Litigation Group, Andrew Kochanowski, also will be involved in the suit as will many other Sommers Schwartz' attorneys and staff. Mr. Kochanowski has served as plaintiff's counsel in many complex business cases across the country, including antitrust issues on behalf of both plaintiffs and defendants in a variety of industries since the late 1980's. In the past few years specifically, he was lead counsel in a case against a Japanese robotics manufacturer under the Robinson Patman Act; lead counsel in a case involving a baseball bat manufacturer under the Sherman Act; and he has litigated patent misuse claims under the Sherman Act.

Also assisting in the prosecution of this case are Lance Young of the Law Office of Lance C. Young, and Kenneth A. Wexler and Edward Wallace of Wexler Wallace LLP. *See* attached firm resumes and attorney biographies. Separately and together, these firms have led and participated in countless class actions and multidistrict proceedings over the last two and a half decades – including many healthcare antitrust class actions – resulting in hundreds of millions of dollars of recoveries for injured plaintiffs. Rounding out the Plaintiff's team is attorney Eric Goldstein of Johnston, Sztykiel, Hunt, Goldstein, Fitzgibbons & Clifford, who serves as the City of Pontiac's outside litigation counsel. *See* attached firm resume.

### iii.  Counsel's knowledge of the applicable law

Counsel's knowledge of the law is aptly evidenced by the gravitas of Plaintiff's Complaint and the analysis and arguments presented herein. Plaintiff's counsel have decades of experience litigating antitrust cases and other types of health care related claims. Sommers Schwartz has a long history of representing municipalities and self-insureds in antitrust cases and the firm currently represents the City of Detroit, Oakland County, Wayne County and the City of Sterling Heights in cases pending in other venues, as well as the City of Pontiac in the instant suit. It also is representing plaintiffs in other currently pending antitrust cases. *In re Blood Reagents Antitrust Litigation,* MDL No. 2081; *In re Refrigerant Compressors Antitrust Litigation,* MDL No. 2042; *In re Plasma-Derivative Protein Therapies Antitrust Litigation,* MDL No. 2109.

### iv.  The resources that counsel will commit to representing the class

Sommers Schwartz is the largest plaintiff law firm in the State of Michigan, and one of the largest in the country. With over forty top-rated lawyers in a wide variety of fields, including municipal and appellate law, and other para-professional staff, the firm is well equipped to efficiently manage this case. *See*, *e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2008

WL 2024987 at *1-2 (N.D. Cal.)(explaining the benefits of appointing one attorney and one firm to serve as class counsel):

> A single firm will usually provide more effective and efficient representation than a group of two or more firms. A single firm is already organized with internal levels of communication and management structure. A group of firms on the other hand, must create these structures. This will tend to increase the risk that items may fall through the cracks. Moreover as the [Rule 23] Advisory Committee Note states, "the court should be alert to … the risk of overstaffing" and the possibility of "an ungainly counsel structure."
>
> *   *   *
>
> [Moreover,] while two of the firms indicated that their top attorneys would be involved, only one firm made it clear that it's top attorney would lead, rather than merely participate, in his firm's role as interim lead counsel.

Mr. Thompson and Sommers Schwartz are not already overly taxed by obligations and class counsel appointments in other class actions and MDL's, and the firm's existing cases, relationships and leadership commitments allow ample time and resources to lead and effectively prosecute this case.

## II.    CONCLUSION

For the foregoing reasons, the Court should appoint Sommers Schwartz as Interim Class Counsel for the non-Blue Cross direct purchaser class.

Dated:  February 17, 2011

<div style="margin-left:40%">

Respectfully submitted,

s/ Jason Thompson (P47184)
Andrew J. Kochanowski (P55117)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075-1100
(248) 355-0300
jthompson@sommerspc.com
akochanowski@sommerspc.com

</div>

14

Lance Young (P51254)
LAW OFFICE OF LANCE C. YOUNG
43311 Joy Road #244
Canton, MI 48187
(734) 446-6932
younglcy@hotmail.com

Edward A. Wallace, Esq.
WEXLER WALLACE LLP
55 West Monroe St.
Suite 3300
Chicago, IL 60603
(312) 346-2222
eaw@wexlerwallace.com

Eric S. Goldstein (P45842)
JOHNSTON, SZTYKIEL, HUNT, GOLDSTEIN,
FITZGIBBONS & CLIFFORD
1301 W. Long Lake Road, Suite 250
Troy, MI 48098
(248) 641-1800
egoldstein@jshlawmi.com

Robert Anthony Alvarez (P66954)
AVANTI LAW GROUP, PLLC
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I certify that on 2/17/11, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Jason J. Thompson (P47184)
Sommers Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, MI   48075
248-355-0300
jthompson@sommerspc.com

15