**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

|  |  |  |
|---|---|---|
| CITY OF PONTIAC, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 2:11-cv-10276-DPH-MKM |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, et al., | ) ) ) ) | Judge Denise Page Hood |
| Defendants. | ) ) | Mag. Mona K. Majzoub |

_____

**DEFENDANTS GRATIOT COMMUNITY HOSPITAL, METRO HEALTH,
MIDMICHIGAN HEALTH, COVENANT HEALTHCARE AND MARQUETTE
GENERAL HOSPITAL MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

Defendants Gratiot Community Hospital ("Gratiot Community"), Marquette General Hospital ("Marquette General"), Metro Health Hospital ("Metro"), Covenant HealthCare ("Covenant") and MidMichigan Medical Center ("MidMichigan") (collectively, "Gratiot Community, et al."), by and through their attorneys, Honigman Miller Schwartz and Cohn LLP, submit this motion to dismiss, with prejudice, all claims alleged against them as set forth in the Complaint. Specifically, Gratiot Community, et al. seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

In support of their motion, Gratiot Community, et al. rely upon the statement of facts, authorities, and argument set forth in the accompanying brief, as well as the Hospital Defendants' Brief in Support of Motion to Dismiss, in which they join.

As required by Eastern District of Michigan Local Rule 7.1(a), counsel for Gratiot Community, et al. sought from Plaintiffs' counsel concurrence in the relief requested herein. Counsel for Gratiot Community et al. called Plaintiffs' counsel and left a detailed voicemail

explaining the nature of the motion, and legal basis for the motion, and offered to explain these issues further to Plaintiffs' counsel.  Counsel for Gratiot Community et al. stated in the voicemail message that if they did not hear back from Plaintiffs' counsel, that they would assume that Plaintiffs' counsel did not concur with the requested relief.  Plaintiffs' counsel never returned the call.  Therefore, because such concurrence was not forthcoming, this motion is necessary.

Respectfully submitted,

Dated:  April 18, 2011

/s/ David A. Ettinger
David A. Ettinger (P26537)
  dettinger@honigman.com
Peter E. Boivin (P62043)
  pboivin@honigman.com
Brock A. Swartzle (P58993)
  bswartzle@honigman.com
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226-3506
(313) 465-7368 (p) (313) 465-7369 (f)

Attorneys for Defendants Gratiot Community Hospital, Marquette General Hospital, Metro Health Hospital, Covenant HealthCare and MidMichigan Medical Center

Dated:  April 18, 2011

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE CITY OF PONTIAC, individually and
on behalf of all others similarly situated,

        Plaintiff,                              Case No. 2:11-cv-10276-DPH-MKM

v.                                         Hon. Denise Page Hood
                                             Hon. Mona K Majzoub

BLUE CROSS BLUE SHIELD
OF MICHIGAN, a Michigan Nonprofit
Healthcare Corporation, et al.,

        Defendants.

---

**<u>BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS GRATIOT
COMMUNITY HOSPITAL, METRO HEALTH, MIDMICHIGAN HEALTH,
COVENANT HEALTHCARE AND MARQUETTE GENERAL HOSPITAL</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................. i

CONCISE STATEMENT OF ISSUES PRESENTED ................................................ ii

CONTROLLING AUTHORITIES ............................................................................. iv

INDEX OF AUTHORITIES ........................................................................................ vi

I.      introduction ....................................................................................................1

II.     **Analysis** ...........................................................................................................3

     A.     **Pontiac Has Not Properly Alleged Antitrust Injury** ..........................3

          1.     **Legal Standard** ..........................................................................3

          2.     **Generic Allegations Are Insufficient** .....................................3

          3.     **No Standing or Antitrust Injury with Respect To Gratiot
                  Community** ..................................................................................6

          4.     **No Standing or Antitrust Injury with Respect to Marquette
                  General** ......................................................................................7

     B.     **Pontiac's Allegations Do Not Support Its Claims Of A Relevant
          Geographic Market** .............................................................................9

          1.     **Applicable Law** .........................................................................9

          2.     **Marquette General** ................................................................10

          3.     **Covenant** .................................................................................11

     C.     **Plaintiffs' Allegations Are Inconsistent With Anticompetitive Intent** ...........11

III.     **CONCLUSION** ............................................................................................13

9013929.19

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.    Should the Complaint be dismissed as to Gratiot Community Hospital, Metro Health, MidMichigan Health, Covenant Healthcare and Marquette General Hospital when the City of Pontiac's Complaint fails to allege facts that could support antitrust injury?

      Defendants Gratiot Community, et al. say YES.

      Plaintiff City of Pontiac says NO.


2.    Should the City of Pontiac's Complaint be dismissed as to Gratiot Community Hospital, when the Complaint fails to allege that the City of Pontiac made any payments to Gratiot Community Hospital?

      Gratiot Community Hospital says YES.

      Plaintiff City of Pontiac says NO.


3.    Should the City of Pontiac's Complaint be dismissed as to Defendant Marquette General Hospital when the Complaint fails to allege competitive harm to Humana, the payor through which the City of Pontiac alleges that it made its payments?

      Defendant Marquette General Hospital says YES.

      Plaintiff City of Pontiac says NO.


4.    Should the City of Pontiac's Complaint against Defendant Marquette General Hospital be dismissed when the Complaint fails to allege facts supporting its alleged relevant market?

      Defendant Marquette General Hospital says YES.

      Plaintiff City of Pontiac says NO.

ii

5.   Should the City of Pontiac's Complaint against Defendant Covenant Healthcare be dismissed when the Complaint fails to allege facts which would support the alleged relevant market and when the facts alleged are inconsistent with the alleged relevant market?

Defendant Covenant Healthcare says YES.

Plaintiff City of Pontiac says NO.

6.   Should the City of Pontiac's Complaint be dismissed as to Defendants Gratiot Community Hospital, Metro Health, MidMichigan Health, Covenant Healthcare and Marquette General Hospital when the allegations in the Complaint are inconsistent with the requirement of anticompetitive intent?

Defendants Gratiot Community Hospital, Metro Health, MidMichigan Health, Covenant Healthcare and Marquette General Hospital say YES.

Plaintiff City of Pontiac says NO.

## CONTROLLING AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ..................................................................................5, 9

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ...........................................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................5

*Care Heating & Cooling v Am. Standard, Inc.*,
427 F.3d 1008 (6th Cir. 2005) .........................................................................11

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*,
854 F.2d 802 (6th Cir. 1988) .............................................................................5

*Davis-Watkins Co. v. Serv. Merch.*,
686 F.2d 1190 (6th Cir. 1982) .........................................................................12

*Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*,
691 F.2d 241 (6th Cir. 1982) .............................................................................5

*Expert Masonry, Inc. v. Boone County, Ky.*,
440 F.3d 336 (6th Cir. 2006) .........................................................................3, 9

*Fed. Trade Comm'n v. Butterworth Health Corp.*,
946 F. Supp. 1285 (W.D. Mich. 1996) ......................................................... 9-10

*In re NM Holdings Co., LLC*,
622 F.3d 613 (6th Cir. 2010) .............................................................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...........................................................................................7

*Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
524 F.3d 726 (6th Cir. 2008) .............................................................................9

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007) ...................................................................1, 3, 12

*Nurse Midwifery Assocs. v. Hibbett*,
918 F.2d 605 (6th Cir. 1990) ...........................................................................11

*Smith v. N. Mich. Hosps.*,
703 F.2d 942 (6th Cir. 1983) ...........................................................................12

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961)................................................................................................9

*Tennessean Truckstop, Inc. v. NTS, Inc.*,
    875 F.2d 86 (6th Cir. 1989) ................................................................................3, 7

9013929.19

# INDEX OF AUTHORITIES

## CASES

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  347 F. Supp. 2d 1061 (D. Utah 2004).................................................................2

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) .........................................................................9

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).............................................................................5, 9

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)..................................................................................3

*Bathke v. Casey's Gen. Stores, Inc.*,
  64 F.3d 340 (8th Cir. 1995) .........................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................5

*Care Heating & Cooling v Am. Standard, Inc.*,
  427 F.3d 1008 (6th Cir. 2005) .......................................................................11

*Chicago Bd. of Trade v. United States*,
  246 U.S. 231 (1918)..................................................................................3

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*,
  854 F.2d 802 (6th Cir. 1988) .........................................................................5

*Davis-Watkins Co. v. Serv. Merch.*,
  686 F.2d 1190 (6th Cir. 1982) .......................................................................12

*Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*,
  691 F.2d 241 (6th Cir. 1982) .........................................................................5

*Expert Masonry, Inc. v. Boone County, Ky.*,
  440 F.3d 336 (6th Cir. 2006) ......................................................................3, 9

*Fed. Trade Comm'n v. Butterworth Health Corp.*,
  946 F. Supp. 1285 (W.D. Mich. 1996) .............................................................9-10

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)...........................................................................6

9013929.19

*In re NM Holdings Co., LLC*,
    622 F.3d 613 (6th Cir. 2010) ......................................................................5

*Little Rock Cardiology Clinic PA v. Baptist Health*,
    591 F.3d 591 (8th Cir. 2009) ....................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................7

*Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
    524 F.3d 726 (6th Cir. 2008) ......................................................................9

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ............................................................1, 3, 12

*Nurse Midwifery Assocs. v. Hibbett*,
    918 F.2d 605 (6th Cir. 1990) ....................................................................11

*Smith v. N. Mich. Hosps.*,
    703 F.2d 942 (6th Cir. 1983) ....................................................................12

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ......................................................................4

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961) ...................................................................................9

*Tennessean Truckstop, Inc. v. NTS, Inc.*,
    875 F.2d 86 (6th Cir. 1989) ....................................................................3, 7

*United States v. Carilion Health Sys.*,
    No. 89-2625, 1989 WL 157282 (4th Cir. Nov. 29, 1989) ........................10

*United States v. Long Island Jewish Med. Ctr.*,
    983 F. Supp. 121 (E.D.N.Y. 1997) ..........................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ......................................................................6

Phillip E. Areeda et al., IIA Antitrust Law ¶ 335c2, at 65 (3d ed. 2007) ........7

## I.    __INTRODUCTION__

Defendants Gratiot Community Hospital ("Gratiot Community"), Marquette General Hospital ("Marquette General"), Metro Health Hospital ("Metro"), Covenant HealthCare ("Covenant") and MidMichigan Medical Center ("MidMichigan") (collectively, "Gratiot Community, et al."), by and through their attorneys, Honigman Miller Schwartz and Cohn LLP, file this short additional brief to supplement the Hospital Defendants' Brief in Support of Motion to Dismiss, in which they join.

This brief is being filed, first, to explain that the City of Pontiac's ("Pontiac") Complaint, while inadequate as to all the Hospital Defendants, suffers unique deficiencies as to Marquette General, Covenant Medical Center and Gratiot Community.   Pontiac's claims as to Gratiot Community are even less specific than for the other Hospital Defendants.   Pontiac never once alleges that it even made any payments to Gratiot Community, much less any inflated payments. (Compl. ¶ 32.)  As a result, Pontiac cannot possibly claim that it suffered an injury resulting from any actions involving Gratiot Community.   Pontiac's claims against Gratiot Community, therefore, are completely deficient and must be dismissed from the lawsuit for lack of standing or antitrust injury.  *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).

While the Complaint's allegations as to Marquette General are somewhat more specific than its assertions with regard to other Hospital Defendants, they are still completely deficient under the antitrust injury doctrine and law applicable to market definition.  In fact, the specific additional allegations as to Marquette General are themselves inconsistent with any claim of antitrust injury.  The Complaint identifies the managed care payors who have alleged to have been excluded as a result of Marquette General's "MFN plus" clause.  But those payors do *not* include Humana, the only payor through which Pontiac claims injury.

1

Similarly, while the specific allegations as to Covenant are extremely limited, they are inconsistent with Pontiac's theory. Pontiac says that Covenant "is a 600 bed hospital that serves 15 counties in east central Michigan." Compl. at ¶ 31. However, Pontiac alleges that the relevant market is the "Saginaw MSA," *id.* at ¶ 69f, which consists of only one county, Saginaw County.[1] As described below, the only alleged *fact* is inconsistent with the alleged *legal conclusion*.

Finally, Pontiac's claims against Gratiot Community, et al. should be dismissed because Pontiac has failed to properly allege that these defendants have the requisite intent required to establish a violation under Section 1 of the Sherman Act. Pontiac's own allegations indicate that the hospitals were not at fault. For example, Pontiac alleges that "Blue Cross' market power and its ubiquitous subscriber base allows it to *dictate* the prices hospitals charge for hospital services throughout Michigan." (Compl. ¶ 57 (emphasis added).) Pontiac also alleges that "[v]ery few hospitals have refused or *are able to refuse* Blue Cross' demands for an MFN," (*id.* ¶ 79 (emphasis added)). These allegations are inconsistent with any allegation or proof of anticompetitive intent, as is required in this Circuit.

Thus, while Pontiac's allegations are in most respects far too general to survive, their few specific allegations are inconsistent with fundamental antitrust requirements. As the Sixth Circuit sitting *en banc* has stated:

> The key failing in *NicSand's* complaint is not that it has too few details but that it has too many. While we must accept all of a claimant's allegations as true at this stage of a case, that does not mean we must *ignore* those allegations when they defeat the claim . . .

---

[1] *See* Metropolitan and Micropolitan Statistical Areas and Components, Office of Management and Budget (Dec. 2009), http://www.census.gov/population/www/metroareas/lists/2009/List1.txt. "MSA designations are government records and the type of records for which judicial notice is typically taken." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 347 F. Supp. 2d 1061, 1067 (D. Utah 2004).

*NicSand*, 507 F.3d at 457.  The same conclusion applies here.

## II.    ANALYSIS

### A.    Pontiac Has Not Properly Alleged Antitrust Injury

#### 1.    Legal Standard

Pontiac's allegations of antitrust injury as to Gratiot Community, et al., and as to Gratiot Community and Marquette General in particular, are clearly deficient.  Antitrust injury requires allegation and proof of damage to the plaintiff arising from anticompetitive effects.  To plead an antitrust injury, a plaintiff must allege facts which show both "(1) that the alleged violation tends to reduce competition in some market and (2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions." *Tennessean Truckstop, Inc. v. NTS, Inc.,* 875 F.2d 86, 88 (6th Cir. 1989) (citations omitted).  The anticompetitive effect of the MFN plus clauses must be sufficient to "suppress or even destroy competition" in the relevant market. *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918).

Antitrust injury is an essential element of antitrust standing.  *NicSand*, 507 F.3d at 450; *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 345 (6th Cir. 2006).  Moreover, antitrust injury is a necessary element of any private antitrust lawsuit, even one analyzed under the *per se* standard.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("[W]e have previously recognized that even in cases involving *per se* violations, the right of action under § 4 of the Clayton Act is available only to those private plaintiffs who have suffered antitrust injury.").

#### 2.    Generic Allegations Are Insufficient

This standard is not met by factual allegations as to any of Gratiot Community, et al.  The Complaint's specific allegations about each of Gratiot Community, MidMichigan, Covenant,

3

and Metro on *any* subject consist of exactly one full paragraph and two subparagraphs.  (For Gratiot Community, *see* Compl. ¶¶ 32, 69f, 82f; for Covenant *id.* at ¶¶ 31, 69f, 82g; for MidMichigan, *see id.* ¶¶ 35, 69f, 82f; for Metro, *see id.* ¶¶ 34, 69g, 82e).  The only factual allegations contained in those paragraphs are the identity of the hospital, the fact that it signed an "MFN plus" clause, the amount of the "plus" differential, the fact that Pontiac made one or more payments to it, and the identity of the particular metropolitan statistical area that is alleged to be a relevant geographic market for that hospital.  Literally nothing else is alleged as to any of these hospitals.

What the Complaint contains, instead, are generalities that say nothing about these specific hospitals (or virtually any other specific hospital).  Pontiac's allegations on antitrust injury in particular are based on such generic contentions.  For every Hospital Defendant except Gratiot Community, Pontiac alleges, using identical language, that it made "one or more payments to [the hospital] for hospital services that were inflated by the MFN-plus contracts and arrangement challenged therein" during the "relevant period," and that the Hospital Defendants each entered into a contract with Blue Cross that, "[u]pon information and belief . . . fix[ed] and inflate[d] the price of hospital services in Michigan."  (Compl. ¶¶ 32-35.)  It contends that Blue Cross' MFNs are anticompetitive because they "have caused *many hospitals* to (1) raise prices . . . or (2) demand prices that are too high . . ."  (*Id.* ¶ 10 (emphasis added)).  Pontiac asserts without specifics that Blue Cross' "MFNs have resulted . . . in these anticompetitive effects in *each of the relevant markets* . . ."  (*Id.* ¶ 88 (emphasis added).)

These conclusions are legally inadequate.  *See, e.g., Tamburo v. Dworkin*, 601 F.3d 693, 699-700 (7th Cir. 2010) (dismissing antitrust complaint as "wholly conclusory" because it alleged only that defendants possessed "monopoly power in the relevant market" which they

4

acquired "by means of anticompetitive and/or predatory conduct" without any accompanying "factual allegations"); *Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*, 691 F.2d 241, 243 (6th Cir. 1982) (explaining that "conclusory language regarding the elimination of competition" was insufficient to state a claim).  "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on the Defendants' 12(b)(6) motion." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988) (citations omitted).  It is worth nothing that the *Twombly* decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), was an antitrust case, and that one of the prime motivating factors behind the *Twombly* standard was "the unusually high cost of discovery in antitrust cases." *Id.* at 558 (internal quotation marks omitted).

The Sixth Circuit has recently rejected very similar conclusions that a plaintiff tried to pass off as factual allegations.  In *In re NM Holdings Co., LLC*, 622 F.3d 613, 623 (6th Cir. 2010), the court considered whether the assertion that properly conducted audits "would have caused the independent member of the Fairness Committee to act" was sufficient to satisfy the causation element of a professional negligence claim.  The court rejected it as a "mere 'formulaic recitation' of the causation element . . . and is not sufficient to state a claim. . . ." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  As the Sixth Circuit explained, some "further factual enhancement" is necessary to support a "naked assertion" under the plausibility standard set forth in *Twombly* and *Iqbal*.  *Id.*

Pontiac's assertions here ("hospital services that *were inflated by* the MFN-Plus contracts") are effectively indistinguishable from the rejected conclusion in *In re NM Holdings* ("*would have caused . . .* to act").  Both assert a conclusion about causation without a single fact to support it.  Here, even worse than in *NM Holdings*, these naked conclusions do not even

5

address a specific party. *See, e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (explaining that Federal Rule of Civil Procedure 8 requires that a complaint specify the "'particular activities'" undertaken by a "'particular defendant'" that support a claim against that defendant).

Pontiac thus seeks treble damages against each of Gratiot Community, et al. relating to *its* conduct in *its* market, but Pontiac's claims are not supported by *any* meaningful factual allegations on (among other issues) injury or competitive effect as to the particular hospital claimed to be liable.[2]  Pontiac cannot proceed to collect damages against, e.g., MidMichigan or Metro Health based on its allegations about Blue Cross or its conclusory allegations about the generic "each hospital."

As described below, the allegations are even more deficient as to Gratiot Community, Marquette General and Covenant Health, both because of what was omitted, and because of the (inconsistent) additional allegations that are included.  As a result, the Complaint should be dismissed as to all five Defendants.

### 3. No Standing or Antitrust Injury with Respect To Gratiot Community

As noted above, for each hospital except Gratiot Community, Pontiac does allege that it made a payment to that hospital.  (*See* Compl. ¶ 32.)  While this limited allegation is far short of what is necessary to allege antitrust injury, even this allegation is missing as to Gratiot Community.  Pontiac does not allege that it even made a payment to or relating to Gratiot Community.  Of course, if it didn't make such a payment, it could not have been harmed by allegedly inflated prices.  As such, the Complaint lacks any factual allegations – conclusory or

---

[2] The exception is Marquette General, discussed below.

otherwise – that could support the conclusion that Pontiac was injured in any way by Gratiot Community's actions.

Pontiac has failed, therefore, to meet the fundamental requirement that it incurred injury-in-fact by reason of any anticompetitive conduct by Gratiot Community. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating that conventional Article III standing requires proof of actual injury, causation and redressability); Phillip E. Areeda et al., IIA Antitrust Law ¶ 335c2, at 65 (3d ed. 2007) (explaining that an antitrust plaintiff must show, among other things, injury-in-fact by reason of an antitrust violation).

Pontiac has thereby also failed to allege that it suffered antitrust injury due to any actions involving Gratiot Community. As noted above, antitrust injury requires allegation and proof of damage to the plaintiff arising from anticompetitive effects. *Tennessean Truckstop*, 875 F.2d at 88. Here, since there are no allegations that Pontiac overpaid with respect to Gratiot Community, neither of these requirements are alleged.

For these reasons, the claims against Gratiot Community in particular must be dismissed.

### 4. No Standing or Antitrust Injury with Respect to Marquette General

#### a. Relevant Allegations as to Marquette

Pontiac's Complaint does contain a separate section devoted to "Marquette and the Upper Peninsula." (Compl. ¶¶ 92-102.) While this section contains somewhat more specificity than exists for other hospitals, those specifics do not cure (and in fact exacerbate) the deficiencies in Pontiac's allegations.

Pontiac alleges that Priority Health, a nonprofit health insurer, "sought to enter the market for commercial health insurance in the Upper Peninsula and compete with Blue Cross." (Compl. ¶ 98.) Pontiac maintains that "Marquette General told Priority it would not offer Priority rates less than those required by Defendants' MFN-plus." (*Id.*) Priority allegedly

"concluded that it could not compete with rates" at Marquette General "at the level required by Defendants' MFN-plus." (*Id.* ¶ 99.) As a result, Priority allegedly declined to contract with Marquette General and did not enter the market. (*Id.*) Pontiac believes that "[o]ther commercial health insurers, including Assurant and Health Alliance Plan ('HAP'), likely also would have entered into agreements with Marquette General if they had been able to contract with Marquette General at prices comparable to the prices Blue Cross pays to Marquette General." (*Id.*)

### b.   Antitrust Injury Is Not Alleged as To Marquette

Thus, the alleged anticompetitive effect from Marquette General's actions is that certain other payors, Priority, Assurant and Health Alliance Plan, did not enter the relevant market. But Pontiac does not allege an injury arising out of these facts.

Pontiac does not even allege that it made payments through or to Priority, Assurant, or Health Alliance Plan, the allegedly excluded payors. Indeed, its allegations are inconsistent with such a conclusion; it claims that its relevant purchases have been through Humana.[3] (Compl. ¶ 42.) But the Complaint says nothing about anticompetitive, or any other, effects on Humana from Marquette General's actions. The allegations concerning Marquette General and the Upper Peninsula never even mention Humana. Under the circumstances, the antitrust injury requirement – that the plaintiff be injured by the anticompetitive effects alleged – simply cannot be met.

_____

[3] Pontiac has stated that it purchased through Blue Cross and then Humana, (Compl. ¶ 42, see letter from Jason Thompson, dated March 28, 2011, Exhibit 1), but it has made clear that it is not seeking damages for Blue Cross subscribers in this case. Pontiac's claim is only on behalf of subscribers of payors who were allegedly overcharged, "the non-Blue Cross Direct Purchaser[s]," (Memorandum of Law in Support of Plaintiff's Motion for Pretrial and Case Management Conference ("Dkt. No. 52") at 3). Pontiac makes clear that "the injuries and damages sustained by the Blue Cross subscribers and network participants . . . *are irrelevant*" to their claims. (*Id.* at 8 (emphasis added).)

9013929.19

As with every Hospital Defendant except Gratiot Community, Pontiac does conclusorily allege that it made payments to Marquette General that were allegedly inflated by (unspecified) anticompetitive conduct. (Compl. ¶ 33.) But in the absence of a link to the anticompetitive acts specifically alleged here, that is a mere "fomulaic recitation," *Iqbal*, 129 S. Ct. at 1949, and therefore insufficient for relief.

**B.**   **Pontiac's Allegations Do Not Support Its Claims Of A Relevant Geographic Market**

**1.**   **Applicable Law**

Pontiac's allegations on relevant market are equally deficient. It is required to plead facts indicating that it has defined valid geographic markets. *Expert Masonry, Inc.*, 440 F.3d at 343 (Section 1 claim); *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 633 (5th Cir. 2002) (antitrust conspiracy claims); *see also Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 734 (6th Cir. 2008) (citing *Apani* in support of the dismissal of all antitrust claims, including conspiracy, for failure to define a proper geographic market). But it has not done so.

The relevant geographic market is "the market area in which the seller operates, *and* to which the purchaser can practicably turn for supplies." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (emphasis added). Therefore, in order to state a claim, a complaint must include factual allegations concerning where "consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition." *Fed. Trade Comm'n v. Butterworth Health Corp.*, 946 F. Supp. 1285, 1290 (W.D. Mich. 1996) (citations omitted).

9

These elements are not pleaded as to any of Gratiot Community, et al.  As to Covenant and Marquette General, more is pleaded, but it is either inadequate or inconsistent with these well-established antitrust requirements.

### 2.    Marquette General

Pontiac alleges that the market relevant to its claims against Marquette General is the "western and central Upper Peninsula."  (Compl. ¶ 69(a).)  But it does not offer facts that could plausibly lead to that conclusion.

Unlike its allegations with regard to most of the other Hospital Defendants, Pontiac does allege exactly two facts in support of its market definition relating to Marquette General.  Pontiac alleges only that Marquette General is 178 and 203 miles away from the nearest tertiary care hospitals in Green Bay, Wisconsin and Petoskey, Michigan.  (*Id.* ¶ 94.)  But it does not even attempt to explain how (if at all) these facts relate to the Complaint's alleged market definition.

The case law establishes that this is woefully insufficient to support *any* market definition.  For example, Pontiac does not allege facts which address whether Marquette General's patients in the central and western Upper Peninsula could "practicably turn" to hospitals in Green Bay or Petoskey, *Butterworth*, 946 F. Supp. at 1290, or whether Marquette General already "faces competition" from those hospitals, *id.*;  *see also Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 598 (8th Cir. 2009) (explaining that a plaintiff must allege "a geographic market in which only a small percentage of purchasers have alternative suppliers to whom they could practicably turn. . . .").[4]

_____

[4] A broad geographic market is especially appropriate for a claim, like the one against Marquette General, that focuses on tertiary services.  (Compl. ¶¶ 94, 95, 97.)  *See, e.g.*, *United States v. Carilion Health Sys.*, No. 89-2625, 1989 WL 157282, at *1 (4th Cir. Nov. 29, 1989) (noting that the relevant geographic market for tertiary services was "even larger" than the one for primary and secondary care); *United States v. Long Island Jewish Med. Ctr.*, 983 F. Supp. 121, 141-142

9013929.19

These are the critical issues in determining the geographic market, but Pontiac simply ignores them in its Complaint.  Therefore, its claims must be dismissed.

### 3. Covenant

In Covenant's case, the allegations are not merely inadequate, but are *inconsistent* with the requirements of market definition.  As noted above, the relevant market must include, among other things, "the market area in which the seller operates," *Tampa Electric, supra*.  But Pontiac alleges that Covenant operates in a 15 county service area.  Compl. at ¶ 31.  So its claim that the market is limited to one county is simply contrary to the law.  In this respect as well, Pontiac's Complaint fails to state a claim as to Covenant.[5]

### C. Plaintiffs' Allegations Are Inconsistent With Anticompetitive Intent

Pontiac has also failed to allege, as it must, facts indicating that any of the Hospital Defendants had any anticompetitive object when, as alleged, they gave in to Blue Cross' "demands" to include MFN-plus provisions in the contracts.  (Compl. ¶ 78.)  In this Circuit, in addition to alleging anticompetitive effects, *see supra*, Pontiac must also allege "that the objects of . . . the contract were illegal."  *Care Heating & Cooling v Am. Standard, Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005) (citation omitted); *see also Nurse Midwifery Assocs. v. Hibbett*, 918 F.2d

---

(E.D.N.Y. 1997) (finding that the relevant geographic market for primary and secondary care was Queens and Nassau, whereas the relevant market for tertiary care was Manhattan, Queens, Nassau and western Suffolk County).

[5] Pontiac recognizes the importance of the service area, since in ¶71 it asserts (totally conclusorily) that the proposed geographic markets "approximate the areas served by the hospitals."  This conclusory allegation is specifically contradicted by the specific allegation that Covenant serves 15 counties.

Of course, even this area will understate the relevant market.  The particular "trade area" of the Defendant, "the area from which it currently draws its customers," is too narrow to constitute a full geographic market, since it ignores areas from which customers "could practicably go."  *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 346 (8th Cir. 1995) (internal quotation marks omitted).  But Pontiac fails to define a market that is consistent even with its own (legally inadequate) approach, much less the broader approach required by the law.

605, 611 (6th Cir. 1990) (explaining that to establish a violation of Section 1, a plaintiff "must establish that the defendants combined or conspired with an intent to unreasonably restrain trade"); *Smith v. N. Mich. Hosps.*, 703 F.2d 942, 949 (6th Cir. 1983) ("To establish a violation of Section 1 of the Act the plaintiff must establish that the defendants combined or conspired with an intent to unreasonably restrain trade"); *Davis-Watkins Co. v. Serv. Merch.*, 686 F.2d 1190, 1195-96 (6th Cir. 1982) (stating that a plaintiff must establish "that the objects of . . . that contract or conspiracy were illegal").

Here, Pontiac has failed to alleged the requisite intent required to establish a valid Section 1 conspiracy.  In fact, it has alleged just the opposite, that the Hospital Defendants were *compelled* to include MFN-plus provisions in the contracts.  For example, Pontiac alleges:

- "Blue Cross' market power and its ubiquitous subscriber base also allows it to *dictate* the price hospitals charge for hospital services in each of the alleged relevant geographic markets."  (Compl. ¶ 75.) (Emphasis added.)

- "In some contracts, Blue Cross *requires* the hospital to contract with any other commercial insurer at rates at least as high as the hospital contracts with Blue Cross – an equal-to MFN.  In others, Blue Cross *demands* even more and *requires* the hospital to contract with other insurers at rates higher than those paid by Blue Cross, typically by a specified percentage differential – an MFN-plus."  (*Id.*. ¶ 78.) (Emphasis added.)

- "Very few hospitals have refused or *are able to refuse* Blue Cross' demands for an MFN.  Because most hospitals operate on *very slim margins*, and because many hospitals already *lose money* on some portion of their Blue Cross business, hospitals have *little choice* but to act against their own self interests and increase the prices charged to all non-Blue Cross purchasers and insureds."  (*Id.*. ¶ 79.) (Emphasis added.)

Elsewhere, Pontiac does assert that Blue Cross agreed to pay higher prices "in exchange" for an MFN-plus provision.  (*Id.* ¶ 92.)  Yet, again, this is a legal conclusion and not specific as to any hospital; where are the factual allegations to support this?  As described above, the factual allegations that are in the Complaint actually contradict Pontiac's claim.  That is a more than sufficient basis to reject the claim.  *See NicSand, supra.*

### III.   <u>CONCLUSION</u>

Pontiac's Complaint (largely copied verbatim from the filing of the Department of Justice) attempts to fit a very square peg into an extremely round hole.  Whatever the merits or lack thereof of a DOJ Complaint filed to seek a statewide injunction against Blue Cross, these allegations are an insufficient basis on which to seek treble damages against these hospitals based on alleged conduct, and effects, specific to their local markets.  Since, for example, the competitive effects alleged in the Alma market (containing Gratiot Community) say nothing about the effects, and liability, attributable to Metro Health (in Grand Rapids), it was incumbent on Pontiac to properly allege its case separately as to each hospital.  It has fallen far short of that minimal requirement, and should not be permitted to seek massive antitrust discovery against these hospital defendants based on so little substance.

Strikingly, the Pontiac Complaint contains virtually no substantive factual allegations not already contained in the DOJ Complaint – yet the Department of Justice did not sue the Hospital Defendants.  The Department of Justice was correct in this regard, not Pontiac.

For the foregoing reasons, and for the additional reasons stated in the Hospital Defendants' Brief in Support of Motion to Dismiss, the Gratiot Community et al. defendants request the Court to dismiss all claims against them with prejudice.

Respectfully submitted,

/s/ David A. Ettinger
David A. Ettinger (P26537)
  dettinger@honigman.com
Peter E. Boivin (P62043)
  pboivin@honigman.com
Brock A. Swartzle (P58993)
  bswartzle@honigman.com
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Dated:  April 18, 2011          660 Woodward Avenue

13

Detroit, Michigan  48226-3506
(313) 465-7368 (p) (313) 465-7369 (f)

Attorneys for Defendants Gratiot Community Hospital, Marquette General Hospital, Metro Health Hospital, Covenant HealthCare and MidMichigan Medical Center

14

### CERTIFICATE OF SERVICE

This is to certify that on this 18th day of April 2011, I electronically filed the

foregoing using the CM/ECF system, which sent electronic notice to the following parties:

| | |
|---|---|
| Robert Anthony Alvarez | alvarezlaw@gmail.com |
| Peter E. Boivin | pboivin@honigman.com |
| Keefe A. Brooks | brooks@bwst-law.com |
| Mario A. Cascante | mcascante@avantilaw.com |
| Paul W. Coughenour | pcoughenour@clarkhill.com |
| Thomas Demitrack | tdemitrack@jonesday.com |
| David A. Ettinger | dettinger@honigman.com |
| Eric S. Goldstein | egoldstein@jshlawmi.com |
| Matthew W. Heron | mheron@clarkhill.com |
| Donald Bruce Hoffman | bhoffman@hunton.com |
| Sheldon H. Klein | klein@butzel.com |
| Andrew Kochanowski | akochanowski@sommerspc.com |
| Richard C. Kraus | rkraus@fosterswift.com |
| Scott L. Mandel | smandel@fosterswift.com |
| Mark. R. Miller | mrm@wexlerwallace.com |
| Alyson L. Oliver | notifications@krescholiver.com |
| Bruce L. Sendek | sendek@butzel.com |
| Michael R. Shumaker | mrshumaker@jonesday.com |
| Todd M. Stenerson | tstenerson@hunton.com |
| Jason J. Thompson | jthompson@sommerspc.com |
| Bradley A. Veneberg | dfink@finkandassociateslaw.com |
| Edward A. Wallace | eaw@wexlerwallace.com |
| Lance C. Young | younglcy@hotmail.com |
| Brian M. Ziff | bziff@clarkhill.com |

By:     /s/David A. Ettinger
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue
Detroit, MI  48226-3506
(313) 465-7368
dettinger@honigman.com
(P26537)

1