**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CITY OF PONTIAC,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN, et al.,

    Defendants.
_____/

Case No. 11-10276

HONORABLE DENISE PAGE HOOD

**MEMORANDUM OPINION AND ORDER
REGARDING MOTIONS TO DISMISS FILED BY HOSPITAL DEFENDANTS**

**I.    BACKGROUND/FACTS**

On January 21, 2011, Plaintiff City of Pontiac ("City of Pontiac") filed a proposed class action against Defendants Blue Cross Blue Shield of Michigan ("Blue Cross") and twenty-two hospitals: Ascension Health, Genesys Regional Medical Center, St. Mary's of Michigan Medical Center, St. Joseph Health System, Borgess Health d/b/a/ Borgess Medical Center, St. John Providence Health System d/b/a St. John Hospital & Medical Center; St. John Providence Health System d/b/a Southfield Providence Hospital, St. John Providence Health System d/b/a Providence Park Hospital-Novi, St. John Providence Health System d/b/a/ St. John Hospital-North Shore Campus, St. John Providence Health System d/b/a St. John Macomb-Oakland Hospital, St. John Providence Health System d/b/a St. John River District Hospital-East China, Botsford Hospital, Covenant HealthCare d/b/a Covenant Medical Center, Gratiot Community Hospital, Marquette General Health System d/b/a Marquette General Hospital, Metro Health d/b/a Metro Health Hospital, MidMichigan Health d/b/a MidMichigan Medical Center-Midland, Munson Healthcare d/b/a Munson Medical Center, Sparrow Health System d/b/a Sparrow Hospital, William Beaumont

Hospital-Royal Oak, William Beaumont Hospital-Troy, and William Beaumont Hospital-Grosse Pointe (collectively, "Hospital Defendants"). The Complaint alleges: Unlawful Conspiracy and Agreements in Violation of § 1 of the Sherman Act (Count I); Violations of the Michigan Antitrust Reform Act, M.C.L.A. § 445.772 (Count II); and, Unjust Enrichment (Count III).

Plaintiff claims that, since 2007, Blue Cross and the 22 Hospital Defendants have illegally contracted, conspired and engaged in anti-competitive conduct, including the execution and enforcement of a special type of "most favored nation" clause known as an "MFN-Plus" contract. (Comp., ¶ 1) The "MFN-plus" contract requires each of the Hospital Defendants to charge higher prices for hospital services to non-Blue Cross purchasers and insureds by fixed percentages ranging from 23% to 39%. (Comp., ¶ 1) The "MFN-plus" agreements have harmed competition by: 1) reducing the ability of other health insurers to compete with Blue Cross, or actually excluding Blue Cross' competitors in certain markets; 2) raising the prices for hospital services paid by Blue Cross' competitors and by all non-Blue Cross purchasers and insureds; and/or 3) by fixing and inflating the prices the Hospital Defendants charge for hospital services. (Comp., ¶ 1) The City of Pontiac alleges that the "MFN-plus" agreements are *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 2 of the Michigan Antitrust Reform act, M.C.L.A. § 445.772 and have unlawfully fixed prices and restrained trade throughout the relevant markets. (Comp., ¶ 2)

Blue Cross is the largest provider of commercial health insurance in Michigan, covering more than three million Michigan residents, more than 60% of the commercially insured population. (Comp., ¶ 3) Blue Cross insures more than nine times as many Michigan residents as its next largest commercial health insurance competitor, with revenues in excess of $10 billion in 2009 and has market power in the sale of commercial health insurance in each of the relevant geographic areas

alleged in the Complaint. (Comp., ¶4) Blue Cross competes with for-profit and nonprofit health insurers and is the largest non-governmental purchaser of health care services, including hospital services, in Michigan, purchasing from all 131 general acute care hospitals in Michigan, more than $4 billion in hospital services in 2007. (Comp., ¶¶ 5-6) Blue Cross has sought to include MFNs in many of its contracts with hospitals, including 70 of Michigan's 131 general acute care hospitals. (Comp., ¶ 7) The 70 hospitals operate more than 40% of Michigan's acute care hospital beds. (Comp., ¶ 7)

Blue Cross generally enters into two types of MFNs, which require a hospital to provide hospital services to Blue Cross' competitors and all non-Blue Cross purchasers and insureds either at higher prices than Blue Cross pays or at prices no less than Blue Cross pays. (Comp., ¶ 8) The "MFN-plus" requires the Hospitals to charge some or all other commercial insurers *more* than the Hospitals charge Blue Cross, typically by a specified percentage differential. (Comp., ¶ 8(A)) The "Equal-to MFNs" have been entered into with small, community hospitals, requiring the hospitals to charge other commercial insurers at least as much as they charge Blue Cross. (Comp., ¶ 8(B))

Blue Cross has sought and obtained MFNs in many Hospital contracts in exchange for increases in the prices Blue Cross pays for the hospitals' services. (Comp., ¶ 9) The City of Pontiac alleges that in these instances, Blue Cross has purchased protection from competition by causing hospitals to raise the minimum prices they can charge to Blue Cross' competitors and all non-Blue Cross purchasers and insures, but in doing so has also increased Blue Cross' own costs. (Comp., ¶ 9) The City of Pontiac claims that Blue Cross has not sought or used MFNs to lower its own costs of obtaining hospital services. The City of Pontiac asserts that the Hospital Defendants' MFNs have caused many hospitals to: 1) raise prices to Blue Cross' competitors and all non-Blue Cross

3

purchasers and insureds by substantial amounts, or 2) demand prices that are too high to allow competitors to compete, effectively excluding them from the market. (Comp., ¶ 10) By denying Blue Cross' competitors access to competitive hospital contracts, the City of Pontiac alleges that the MFNs have deterred or prevented competitive entry and expansion in health insurance markets in Michigan, and have increased prices for health insurance sold by Blue Cross and its competitors, and increased prices for hospital services sold to all non-Blue Cross purchasers and insureds. (Comp., ¶ 10) The City of Pontiac notes that the United States Department of Justice and the Michigan Attorney General[1] filed a lawsuit against Blue Cross on October 10, 2010, relying on an in-depth investigation over multiple years alleging antitrust violations of the same nature as set forth in the City of Pontiac's Complaint and seeking injunctive relief only.

In lieu of Answers, all Hospital Defendants have joined in a Motion to Dismiss the Complaint, along with two other more specific motions filed by various hospitals.[2] Blue Cross filed a joint response to all three motions. Replies have been filed and a hearing was held on the matter.

## II. ANALYSIS

### A. Motion to Dismiss Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on

---

[1] *United States v. BCBS-MI,* Case No. 10-14155. Three other related proposed class action lawsuits have been filed: Case No. 10-14360, *The Shane Group v. BCBS-MI*; Case No. 10-14887, *Michigan Regional Carpenters, et al. v. BCBS-MI*; Case No. 11-10375, *Steele v. BCBS-MI;* and, Case No. 11-15346, *Aetna Inc. v. BCBS-MI.*

[2] Joint Motion to Dismiss by All 22 Hospital Defendants (No. 85); Motion to Dismiss by Covenant, Gratiot Community, Marquette General, Metro Health, Mid Michigan Medical Center/Midland (No. 99); Motion to Dismiss by Munson Medical and Sparrow Hospital (No. 100).

failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader

5

is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### B. Joint Motion to Dismiss by All Hospital Defendants

The Hospital Defendants raise five arguments to support their motion to dismiss: 1) the City of Pontiac's *per se* theory fails as a matter of law; 2) if the City of Pontiac seeks recovery under the rule of reason, its Complaint is legally deficient; 3) all of the City of Pontiac's federal and state antitrust damages claims are barred by the state action doctrine; 4) the City of Pontiac is an indirect purchaser and therefore cannot recover for the alleged overcharges under the Sherman Act; and, 5) the City of Pontiac's unjust enrichment claim fails as a matter of law. Because the City of Pontiac is only alleging a *per se* theory as to the Hospital Defendants, as alleged in its Complaint and affirmed in its response, the rule of reason analysis need not be addressed.

### C. Sherman Act (Count I) and Michigan Anti-Trust Act (Count II)

#### 1. *Per Se* Theory

The Hospital Defendants argue that no case supports the City of Pontiac's claim that an "MFN-plus" clause in separate and individual negotiations with different hospitals, each a supplier to Blue Cross, can constitute a *per se* violation of the federal or state antitrust laws. The Hospital Defendants assert that this case presents a quintessential vertical restraint: hospitals supply hospital services to Blue Cross, a buyer, and Blue Cross is seeking what the City of Pontiac describes as a restraint–the "MFN-plus" clauses in its contracts with the Hospital Defendants.

In response, the City of Pontiac asserts that the vast majority of the Hospital Defendants'

arguments are directed at issues that are not even a part of its case and the motions are largely an attempt at misdirection. The City of Pontiac asserts that it only seeks to challenge the "MFN-plus" provisions and the conspiracy and coordinated efforts that led to the creation of such provisions. The City of Pontiac alleges that Blue Cross paid millions of dollars to the Hospital Defendants to ensure their complicity in the "MFN-plus" scheme. The City of Pontiac admits that it is not challenging the MFN provisions as pursued by the Government and other class plaintiffs. (Pontiac Resp. Br., p. 3) The City of Pontiac agrees that an MFN is a vertical restraint because it primarily affects the prices that hospitals charge Blue Cross. (Pontiac Resp. Br., pp. 3-4) The City of Pontiac asserts that it is challenging the "MFN-plus" provision which is a horizontal restraint because it primarily affects and fixes the prices the Defendant Hospitals charge everyone else. The City of Pontiac argues that "MFN-plus" agreements are rare, but are facially anticompetitive, and have yet to be tested as a matter of law.

The City of Pontiac clams that the "MFN-plus" scheme exists because Blue Cross literally bought and paid for these restraints to disadvantage its competitors and to prevent "any slippage in our [pricing] differential from what we experience today." (Comp., ¶¶ 82, 86-86, 92, 111) Alternatively, the City of Pontiac claims that in response to Blue Cross' MFNs, the Hospital Defendants and other Hospitals concluded together, likely through discussions at industry Participating Hospital Agreement meetings, that no single Hospital could risk increasing prices to their non-Blue Cross customers without driving some business to nearby competitors, whereby a deal was struck in which each Hospital agreed to join the conspiracy and charge higher prices by fixed percentages ranging from 10% to 39% so long as each of their closest competitors also agreed to participate in the scheme. The City of Pontiac claims that the effect of this horizontal agreement

7

among the Hospitals was to level the playing field amongst themselves so that no Hospital would be competitively disadvantaged by accepting or being forced to accept an MFN.

Section 1 of the Sherman Acts provides that, "[e]very contract, in combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. ..."  15 U.S.C. § 1.  Section 1 prohibits every agreement in restraint of trade. *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 342 (1982).  The Supreme Court has held that Congress intended to prohibit only "unreasonable" restraints of trade. *Id.* at 342-43.  Generally, restraints of trade are evaluated using a "rule of reason" analysis. *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997).  There are restraints of trade that are deemed unlawful *per se* because such restraints "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit." *Id.* "*Per se* treatment is appropriate '[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it.'" *Id.* (quotation omitted).  The *per se* rule is applied when the restraint facially appears to be one that would always or almost always tend to restrict competition and decrease output. *In re Cardizem CD Antitrust Litigation,* 332 F.3d 896, 905 (6th Cir. 2003)(quotation omitted).  The *per se* approach applies a "conclusive presumption" of illegality to certain types of agreements and no consideration is given to the intent behind the restraint, to any claimed pro-competitive justifications, or to the restraint's actual effect on competition. *Id.* (citations omitted).

Horizontal restraints are subject to the *per se* rule as recognized by the Supreme Court. *Id.* at 906 (citing, *National College Athletic Ass'n v. Board of Regents,* 468 U.S. 85, 100 (1984)("Horizontal price fixing and output limitation are ordinarily condemned as a matter of law

8

under an 'illegal *per se*' approach because the probability that these practices are anticompetitive is so high.")) Horizontal price fixing and market allocation are thought to be so inherently anticompetitive that each is illegal *per se* without inquiry into the harm actually caused. *Id.* (quoting *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768 (1984)). A classic example of a *per se* violation is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition. Such concerted action is usually termed 'horizontal' restraint, which is distinguishable from combinations of persons at different levels of the market structure, manufacturers and distributors, which are termed 'vertical' restraints. *Id.* All vertical price restraints are to be judged under the rule of reason standard. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 435 (2008).

To determine whether a *per se* violation has occurred based on a horizontal restraint, the district court must examine the complaint to determine whether each of the defendant is wholly owned and controlled by a certain parent company and where there is a "sister" relationship between each of the defendants, whether these defendants are "incapable, as a matter of law, of conspiring to form a horizontal ... violation of Section 1 of the Sherman Act." *Id.* Horizontal agreements must be shown between competing manufacturers. *Id.*

Reviewing the Complaint, the Court finds that the City of Pontiac has failed to state a claim of *per se* violation by the Hospital Defendants. First, looking at the relationship between Blue Cross and the Hospital Defendants, there is no allegation of horizontal relationship because Blue Cross and the Hospital Defendants are at different levels of the market structure–Blue Cross as the purchaser of hospital services from the Hospital Defendants. (Comp., ¶ 6) Blue Cross competes with for-profit and non-profit health insurers. (Comp., ¶ 5) There are no allegations that Blue Cross

competes with the Hospital Defendants. The relationship between Blue Cross and the Hospital Defendants is vertical. Therefore, as to Blue Cross and the Hospital Defendants, there is no horizontal relationship and the *per se* rule does not apply to the agreements between Blue Cross and the Hospital Defendants.

As to the relationship between the Hospital Defendants, many of the named-Hospital Defendants are incapable of conspiring with each other in a horizontal relationship since they appear to have "sister" relationships with each other. Specifically, the Complaint alleges that Defendant Ascension Health is a healthcare organization and network that provides health care services through more than 500 affiliated hospitals and facilities in 20 states, including other named Defendants: Genesys Regional Medical Center, St. Mary's Michigan Medical Center, St. Joseph Health System, Borgess Medical Center, St. John Hospital & Medical Center, Southfield Providence Hospital, Providence Park Hospital-Novi, St. John Hospital-North Shore Campus, St. John Macomb-Oakland, and St. John River District Hospital. (Comp., ¶¶ 18-29) As to the Ascension Health-related Defendants, as noted by the Sixth Circuit in *Total Benefits*, these defendants are "incapable, as a matter of law, of conspiring to form a horizontal ... violation of Section 1 of the Sherman Act." 552 F.3d at 435.

Regarding the relationship between all Hospital Defendants, the Complaint is devoid of any allegations that there exists horizontal agreements between the Hospital Defendants to fix the prices of hospital services. The Complaint merely alleges that each Hospital Defendant "joined Blue Cross's conspiracy" by signing and enforcing one or more MFN-plus contract with Blue Cross that fix and inflate the price of hospital services in Michigan. (Comp., ¶¶ 18-29) Count 1 of the Complaint alleges that the provider agreements "between Blue Cross and one or more of the

Hospital Defendants" violate Section 1 of the Sherman Act. (Comp., ¶¶ 137-143) Nothing in the Complaint asserts that the Hospital Defendants, between them, agreed to fix and inflate the price of hospital services in Michigan. The City of Pontiac argues in response that "the Hospitals concluded together (likely through discussions at industry PHA meetings) that no single Hospital could risk increasing prices to their non-Blue Cross customers without driving some business to nearby competitors; whereby a deal was struck in which each Hospital agreed to join the conspiracy and charge higher prices by fixed percentages ranging from 10% to 39% so long as each of their closest competitors also agreed to participate in the scheme." (Pontiac Resp., p. 8) However, this factual allegation is not found anywhere in the Complaint.

In a Rule 12(b)(6) Motion, the Court considers the allegations in the Complaint. The City of Pontiac asserts in its response that it offered to include "clarifications" of its claims in a formal amendment to the Complaint but that the Hospital Defendants refused such an amendment, preferring instead to attack the current Complaint as originally filed. (Pontiac Resp., p. 2) However, the Hospital Defendants' agreement to file an Amended Complaint is not required under Rule 15(a) of the Rules of Civil Procedure, which provides that a party may file an amended pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). The City of Pontiac may also amend its pleading by leave of court. The City of Pontiac filed no amended Complaint or a motion to amend the Complaint. As noted by the Sixth Circuit in *Total Benefits,* "[w]ith a motion to dismiss pending, Total Benefits had every reason to make sure their amended complaint met the standard of adequate notice pleading and 'plausibility.' 552 F.3d at 438. The Sixth Circuit held that a district court, without a request, is not required to allow the parties an opportunity to amend a complaint because "it would render a motion to dismiss useless

in disposing of unfit claims." *Id.* "[I]t is not the district court's role to initiate amendments" and a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought. *Id.* This District's rules provide that no counter motion be contained in a response to a motion and that a separate motion must be filed. (ECF Policies and Procedures, R5(e))

As to the City of Pontiac's claim it requires discovery to support its allegations, the Sixth Circuit has interpreted *Iqbal* to mean that discovery cannot serve as the means to obtain the facts required in a complaint. *See New Albany Tractor v. Louisville Tractor,* 650 F.3d 1046, 1051 (6th Cir. 2011). In *Albany Tractor*, the plaintiff was unable to provide facts related to the allegations because the information was retained by the defendants. *Id.* "[N]o discovery may be conducted in cases such as this, even when the information needed to establish a claim of discriminatory pricing is solely within the purview of the defendant or a third party, as it is here." *Id.* The City of Pontiac is not entitled to discovery in order to support any of its allegations in its Complaint.

The City of Pontiac has failed to state a claim upon which relief may be granted under its *per se* theory as to the Hospital Defendants. The Hospital Defendants are dismissed as to Count 1 (Sherman Act) and Count 2 (Michigan Anti-Trust Act) of the Complaint. M.C.L.A. § 445.784(2) provides that "[i]t is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes." "Because Michigan antitrust law follows federal precedents, our reasoning regarding the federal antitrust claims applies equally to the state antitrust claims." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 619 n. 4 (6th Cir. 1999).

   **2.**  **Rule of Reason**

As noted above, the City of Pontiac has only alleged a *per se* horizontal claim against the Hospital Defendants and has not alleged a vertical relationship between the Hospital Defendants. The Complaint alleges "Defendants' MFN-plus contracts are *per se* violations of the antitrust laws. (Comp., ¶ 140)  The rule of reason is not applicable to the City of Pontiac's allegations.

### 3.     State Action Doctrine

The Hospital Defendants argue that the City of Pontiac's antitrust damages claims are alternatively barred by the doctrine of state action immunity, incorporating the defenses raised by Blue Cross in its Motion to Dismiss against the Untied States.  The Hospital Defendants argue that Blue Cross' state action immunity automatically shields the Hospital Defendants.

In response, the City of Pontiac asserts that perhaps only two of the Hospital Defendants may remotely be tied to any state action.

The Hospital Defendants' argument that because Blue Cross is considered a "quasi-public entity," the Hospital Defendants are also shielded from damages is without merit.  Courts have held that Blue Cross is not a public entity but a private entity and that Blue Cross, itself, has so argued in other cases. *Riverview Investments, Inc. v. Ottawa Cmty. Improvement Corp.,* 899 F.2d 474, 480-82 (6th Cir. 1992).  Blue Cross manages its own business, controls its contracting relationship with providers and controls its substantive surpluses.  M.C.L.A. §§ 550.1301(2), 550.1301(1), 550.1206(1). This Court has accepted Blue Cross' arguments that it is a private entity, not a state actor. *Loftus v. Blue Cross Blue Shield of Michigan,* 2010 WL 1139338, *4 (E.D. Mich. Mar. 24, 2010)(Hood). The Hospital Defendants' alternative theory to dismiss the case under the state actor theory is without merit and denied on this basis.

### 4.     Indirect Purchaser

13

The Hospital Defendants argue that the City of Pontiac is not a direct-purchaser of Blue Cross since it entered an agreement with Humana to obtain administrative services.

In response, the City of Pontiac argues that it made payments to each of the Hospitals directly and, therefore, it is a direct purchaser for purposes of antitrust laws. The Complaint alleges that the City of Pontiac is a "self-insured" municipality which paid for hospital services directly to the Hospital Defendants. (Comp., ¶¶ 41-44)

In *Illinois Brick v. Illinois,* 431 U.S. 720 (1977), the Supreme Court established a bright-line rule that only direct purchasers may sue their suppliers for overcharges based on violations of the federal antitrust laws. *Id.* at 744-45. At the pleading stage, it appears that the City of Pontiac has sufficiently alleged that as a self-insured municipality, it is a direct purchaser who paid for hospital services directly to the Hospital Defendants. The Hospital Defendants' Motion to Dismiss based on this alternative argument is denied.

### D.     Unjust Enrichment Claim (Count III)

The Hospital Defendants argue that the City of Pontiac has failed to state an unjust enrichment claim. In response, the City of Pontiac asserts it has sufficiently pled such a claim.

The basis for a claim of unjust enrichment follows from a contract implied-in-law, an implied contract imposed by fiction of law intended to enable justice to be accomplished even in cases where no contract was intended. *Williams v. Morgan Stanley & Co., Inc.,* 2009 WL 799162 *6 (E.D. Mich. Mar. 24, 2009)(unpublished)(citing *Cascaden v. Magryta,* 247 Mich. 267 (1929)). Michigan law will sustain a claim of unjust enrichment when the plaintiff is able to establish the requisite elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant." *Sweet Air Inv., Inc. v. Kenney,*

14

275 Mich. App. 492, 504 (2007).  "There is no claim for unjust enrichment when there exists a valid contract covering the same subject matter." *Iverson Industries, Inc. v. Metal Management Ohio, Inc.*, 525 F. Supp. 2d 911 (E.D. Mich. 2007).  In *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 199-200 (2006), the Michigan Supreme Court stated that "we perceive no reason why a plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a quantum meruit [unjust enrichment] claim against a *different* defendant with whom no express contract exists." *Id.* (italics added).  A defendant's mere receipt of a benefit belonging to the plaintiff is not enough to state a claim for unjust enrichment; the circumstances must make it unjust for the defendant to retain the benefit. *In re Estate of McCallum,* 153 Mich. App. 328, 335 (1986)("A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.")

In this matter, the City of Pontiac alleges that the Hospital Defendants have received a benefit from the City of Pontiac which resulted in an inequity to the City of Pontiac because of the Hospital Defendants' retention of the benefit in the form of higher fees for hospital services under the MFN-plus agreement with Blue Cross.  (Comp., ¶ 153-54)  The City of Pontiac has alleged that it has no adequate remedy at law.  (Comp., ¶ 155)  As to each Hospital Defendant the City of Pontiac pled that it made one or more payments to each of the Hospital Defendants "for hospital services that were inflated by the MFN-plus contracts and arrangement challenged herein."  (Comp., ¶¶ 18-40)

The factual basis supporting the City of Pontiac's unjust enrichment claims against the Hospital Defendants fails to state a plausible claim.  The City of Pontiac's factual claim is that the

Hospital Defendants retained the benefit "in the form of higher fees for hospital services under the MFN-plus agreement with Blue Cross." There is no allegation that each of the Hospital Defendant made a mistake, coerced or requested the City of Pontiac to confer a benefit to that particular hospital. The allegation is that "the price of hospital services at individual hospitals direct affects health insurance premiums for the customers that use those hospitals." (Comp., ¶ 53) It is the "customers" that use the hospitals. Although the City of Pontiac may have paid for the price of hospital services, those services were not requested either by the City of Pontiac or the Hospital Defendants. There are no factual circumstances alleged which would make it unjust for the Hospital Defendants to retain the benefit the City of Pontiac may have conferred to the Hospital Defendants, as a result of one of the City of Pontiac's employees or retirees using the Hospital Defendants' services. The Hospital Defendants' Motion to Dismiss the unjust enrichment claim in Count III must be granted for failure to state a plausible claim.

### E.  Gratiot Community Hospital, Metro Health, MidMichigan Health, Covenant HealthCare and Marquette General Hospital's Motion to Dismiss

These Hospital Defendants also joined in the above-motion but filed a separate motion to specifically address the claims against these specific Hospital Defendants. These Specific Hospital Defendants argue that the City of Pontiac failed to allege facts supporting antitrust injury; that the City of Pontiac failed to allege payments to Gratiot Community Hospital; that the City of Pontiac failed to allege competitive harm to Humana, the payor through which the City of Pontiac alleges it made its payments; that the City of Pontiac failed to allege facts as to relevant market; and, that the City of Pontiac failed to allege anticompetitive intent. Given that the Court granted the Joint Motion to Dismiss, this motion is moot.

### F.  Munson Healthcare and Sparrow Health System's Motion to Dismiss

These specific Hospital Defendants also joined in the main motion to dismiss. The only issue these Hospital Defendants raise in their separate motion is that the City of Pontiac failed to make plausible allegations that it has suffered antitrust injury. Again, as noted above, such a requirement is not needed given that the City of Pontiac's allegation is a horizontal *per se* violation claim. However, given that the Court granted the Joint Motion to Dismiss, this motion to dismiss is moot.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Joint Motion to Dismiss **(Doc. No. 85, filed 4/18/2011)** is GRANTED.

IT IS FURTHER ORDERED that the Complaint is DISMISSED as to all the following Hospital Defendants:

> Ascension Health;
> Genesys Regional Medical Center;
> St. Mary's of Michigan Medical Center;
> St. Joseph Health System;
> Borgess Health d/b/a/ Borgess Medical Center;
> St. John Providence Health System d/b/a St. John Hospital & Medical Center;
> St. John Providence Health System d/b/a Southfield Providence Hospital;
> St. John Providence Health System d/b/a Providence Park Hospital-Novi;
> St. John Providence Health System d/b/a/ St. John Hospital-North Shore Campus;
> St. John Providence Health System d/b/a St. John Macomb-Oakland Hospital;
> St. John Providence Health System d/b/a St. John River District Hospital-East China;
> Botsford Hospital;
> Covenant HealthCare d/b/a Covenant Medical Center;
> Gratiot Community Hospital;
> Marquette General Health System d/b/a Marquette General Hospital;
> Metro Health d/b/a Metro Health Hospital;
> MidMichigan Health d/b/a MidMichigan Medical Center-Midland;
> Munson Healthcare d/b/a Munson Medical Center;
> Sparrow Health System d/b/a Sparrow Hospital;
> William Beaumont Hospital-Royal Oak;
> William Beaumont Hospital-Troy; and
> William Beaumont Hospital-Grosse Pointe.

IT IS FURTHER ORDERED that the Motion to Dismiss **(Doc. No. 99, filed 4/18/2011)** is MOOT.

IT IS FURTHER ORDERED that the Motion to Dismiss **(Doc. No. 100, filed 4/18/2011)** is MOOT.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager
