**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CITY OF PONTIAC,

      Plaintiff,

Case No. 11-10276

HONORABLE DENISE PAGE HOOD

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN, et al.,

      Defendants.

_____/

**MEMORANDUM OPINION AND ORDER REGARDING
BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS**

**I.   BACKGROUND/FACTS**

This matter is before the Court on Defendant Blue Cross Blue Shield of Michigan's ("Blue Cross") Motion to Dismiss. Plaintiff City of Pontiac filed a response. A reply was filed by Blue Cross. The parties agreed to submit the motion without oral arguments.

On January 21, 2011, the City of Pontiac filed a proposed class action Complaint against Blue Cross and twenty-two hospitals[1] alleging: Unlawful Conspiracy and Agreements in Violation of § 1 of the Sherman Act (Count I); Violations of the Michigan Antitrust Reform Act, M.C.L.A. § 445.772 (Count II); and, Unjust Enrichment (Count III). The Complaint alleges that since 2007, Blue Cross and the 22 Hospital Defendants have illegally contracted, conspired and engaged in anti-competitive conduct, including the execution and enforcement of a special type of "most favored nation" clause known as an "MFN-Plus" contract. (Comp., ¶ 1) The "MFN-plus" contract requires

---

[1] The twenty-two hospitals filed a Joint Motion to Dismiss which is addressed in a separate opinion.

each of the Hospital Defendants to charge higher prices for hospital services to non-Blue Cross purchasers and insureds by fixed percentages ranging from 23% to 39%. (Comp., ¶ 1) The "MFN-Plus" agreements have harmed competition by: 1) reducing the ability of other health insurers to compete with Blue Cross, or actually excluding Blue Cross' competitors in certain markets; 2) raising the prices for hospital services paid by Blue Cross' competitors and by all non-Blue Cross purchasers and insureds; and/or 3) by fixing and inflating the prices the Hospital Defendants charge for hospital services. (Comp., ¶ 1) The City of Pontiac alleges that the "MFN-Plus" agreements are *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 2 of the Michigan Antitrust Reform act, M.C.L.A. § 445.772 and have unlawfully fixed prices and restrained trade throughout the relevant markets. (Comp., ¶ 2)

Blue Cross is the largest provider of commercial health insurance in Michigan, covering more than three million Michigan residents, more than 60% of the commercially insured population. (Comp., ¶ 3) Blue Cross insures more than nine times as many Michigan residents as its next largest commercial health insurance competitor, with revenues in excess of $10 billion in 2009 and has market power in the sale of commercial health insurance in each of the relevant geographic areas alleged in the Complaint. (Comp., ¶4) Blue Cross competes with for-profit and nonprofit health insurers and is the largest non-governmental purchaser of health care services, including hospital services, in Michigan, purchasing from all 131 general acute care hospitals in Michigan, more than $4 billion in hospital services in 2007. (Comp., ¶¶ 5-6) Blue Cross has sought to include MFNs in many of its contracts with hospitals, including 70 of Michigan's 131 general acute care hospitals. (Comp., ¶ 7) The 70 hospitals operate more than 40% of Michigan's acute care hospital beds. (Comp., ¶ 7)

Blue Cross generally enters into two types of MFNs, which require a hospital to provide hospital services to Blue Cross' competitors and all non-Blue Cross purchasers and insureds either at higher prices than Blue Cross pays or at prices no less than Blue Cross pays. (Comp., ¶ 8) The "MFN-Plus" requires the Hospitals to charge some or all other commercial insurers *more* than the Hospitals charge Blue Cross, typically by a specified percentage differential. (Comp., ¶ 8(A)) The "Equal-to MFNs" have been entered into with small, community hospitals, requiring the hospitals to charge other commercial insurers at least as much as they charge Blue Cross. (Comp., ¶ 8(B))

Blue Cross has sought and obtained MFNs in many Hospital contracts in exchange for increases in the prices Blue Cross pays for the hospitals' services. (Comp., ¶ 9) The City of Pontiac alleges that in these instances, Blue Cross has purchased protection from competition by causing hospitals to raise the minimum prices they can charge to Blue Cross' competitors and all non-Blue Cross purchasers and insureds, but in doing so has also increased Blue Cross' own costs. (Comp., ¶ 9) The City of Pontiac claims that Blue Cross has not sought or used MFNs to lower its own costs of obtaining hospital services. The City of Pontiac asserts that the Hospital Defendants' MFNs have caused many hospitals to: 1) raise prices to Blue Cross' competitors and all non-Blue Cross purchasers and insureds by substantial amounts, or 2) demand prices that are too high to allow competitors to compete, effectively excluding them from the market. (Comp., ¶ 10) By denying Blue Cross' competitors access to competitive hospital contracts, the City of Pontiac alleges that the MFNs have deterred or prevented competitive entry and expansion in health insurance markets in Michigan, and have increased prices for health insurance sold by Blue Cross and its competitors, and increased prices for hospital services sold to all non-Blue Cross purchasers and insureds. (Comp., ¶ 10) The City of Pontiac notes that the United States Department of Justice and the

3

Michigan Attorney General[2] filed a lawsuit against Blue Cross on October 10, 2010, relying on an in-depth investigation over multiple years alleging antitrust violations of the same nature as set forth in the City of Pontiac's Complaint and seeking injunctive relief only.

Blue Cross' Motion to Dismiss raises the following arguments: state action immunity bars the City of Pontiac's claims; the injunctive relief sought by the City of Pontiac is precluded under the *Burford* abstention doctrine; the state anti-trust claims are barred by the Michigan Anti-Trust statute; that the City of Pontiac fails to plead a viable anti trust claim; and, the unjust enrichment claim fails as a matter of law since the City of Pontiac cannot show Blue Cross received any benefit from the City of Pontiac. Both parties rely extensively on the previous briefs filed in the government-related case to support each of their arguments.

## II.   ANALYSIS

### A.   Motion to Dismiss Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2)

---

[2] *United States v. BCBS-MI,* Case No. 10-14155. Other related proposed class action lawsuits have been filed: Case No. 10-14360, *The Shane Group v. BCBS-MI*; Case No. 10-14887, *Michigan Regional Carpenters, et al. v. BCBS-MI*; Case No. 11-10375, *Steele v. BCBS-MI;* Case No. 11-15346, *Aetna Inc. v. BCBS-MI.*

entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show [n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

    **B.**    **State Action Immunity**

        **1.**    **Two-Prong Test**

Blue Cross asserts that it extensively raised the same argument on the state action immunity issue in the related-government case and rather than repeat in detail its arguments from the prior briefing, Blue Cross provided a brief overview of the law and facts establishing state action immunity. The City of Pontiac responds by incorporating the prior briefs filed in the related-government case. In the related-government case, the Court denied Blue Cross' state action immunity defense. (Case No. 10-14155, Doc. No. 66) Blue Cross appealed the matter to the Sixth Circuit of Appeals, but the Court dismissed the case for lack of jurisdiction because no final appealable order was issued by this Court. (*Id.*, Doc. No. 122) Given the parties' reference to the briefs filed in the related-government case, the Court denies Blue Cross' state action immunity for the same reasons set forth in that case and below.

The Supreme Court established a two-part test for determining whether state action immunity saves certain actions from preemption by the Sherman Act: "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself." *First Amer. Title Co. v. Devaugh,* 480 F.3d 438, 445 (6th Cir. 2007); *Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105 (1980); *FTC v. Ticor Title Ins. Co.,* 504 U.S. 621, 636 (1992). The state action immunity doctrine, like other judicially-imposed exemptions from the antitrust laws, must be narrowly construed. *First Amer. Title,* 480 F.3d at 445.

As to the first prong–the challenged restraint must be one clearly articulated and affirmatively expressed as state policy–the Court finds that Blue Cross has failed to meet this prong. The challenged restraint in the Complaint is Blue Cross' use of the MFNs to unreasonably restrain competition with other insurers. The purpose and policy of the Nonprofit Health Care Corporation

6

Reform Act ("NHCCRA") is-

> to promote an appropriate distribution of health care services for all residents of this state, to promote the progress of the science and art of health care in this state, and to assure for nongroup and group subscribers, reasonable access to, and a reasonable cost and quality of, health care services, in recognition that the health care financing system is an essential part of the general health, safety, and welfare of the people of this state.
>
> \* \* \*
>
> It is the intention of the legislature that this act shall be construed to provide for the regulation and supervision of nonprofit health care corporations by the commissioner of insurance so as to secure for all of the people of this state who apply for a certificate, the opportunity for access to health care services at a fair and reasonable price.

M.C.L. § 550.1102(1) and (2). With respect to providers, Blue Cross shall contract with such providers "to assure subscribers reasonable access to, and reasonable cost and quality of, health care services, ..." M.C.L. § 550.1504(1). The following goals of the contract are:

> (a) There will be an appropriate number of providers throughout this state to assure the availability of certificate-covered health care services to each subscriber.
>
> (b) Providers will meet and abide by reasonable standards of health care quality.
>
> (c) Providers will be subject to reimbursement arrangements that will assure a rate of change in the total corporation payment per member to each provider class that is not higher than the compound rate of inflation and real economic growth.

M.C.L. § 500.1504. Provider class plans retained by the commissioner or approved by a hearing officer shall maintain certain standards and, as to hospitals, also include:

> (a) To the extent practicable, reimbursement control shall be expressed in the aggregate to individual hospitals.
>
> (b) No portion of the health care corporation's fair share of the

> hospitals' reasonable financial requirements shall be borne by other health care purchasers. However, this portion shall not preclude reimbursement arrangements which include financial incentives and disincentives.
>
> (c) The health care corporation's programs and policies shall not unreasonably interfere with the hospital's ability and responsibility to manage its operations.

M.C.L. § 500.1516. Blue Cross may enter into provider contracts executed under the Prudent Purchaser Act, M.C.L. §§ 550.1502a and 550.51-63.

Blue Cross argues that, based on the extensive regulatory scheme governing Blue Cross' existence and because Blue Cross is considered a quasi-public creation of statute, Blue Cross is immune under the state action doctrine. Narrowly construing the state action immunity doctrine, the Court's review of the statutes governing Blue Cross' actions reveals that the legislature did not clearly articulate nor affirmatively express the act sought to be restrained–using MFNs to deter competition with other insurers. The NHCCRA's express stated purpose and policy are set forth above–"to secure for all of the people of this state who apply for a certificate, the opportunity for access to health care services at a fair and reasonable price." M.C.L. § 550.1102(1) and (2). The main goal of the NHCCRA is to assure access by the people to health care services; not for Blue Cross to enter into contracts with providers which discourages competition with other insurers–for profit or otherwise. The NHCCRA states that no portion of Blue Cross' fair share of the hospitals' reasonable financial requirements shall be borne by other health care purchasers. M.C.L. § 550.1516(2)(b). Although the Act allows Blue Cross to include reimbursement arrangements which include financial incentives and disincentives, such arrangements cannot result in cost shifting to other health care purchasers. The purpose of the NHCCRA is to make certain that the people of Michigan are able to access health care services at a fair and reasonable price. There is no provision

in the NHCCRA that allows Blue Cross to stifle competition. The Complaint alleges sufficiently, as previously noted, that the MFNs at issue prevent other insurers from competing with Blue Cross.

The second prong for determining whether state action immunity applies is whether the State actively supervises the policy. Based on the many provisions of the NHCCRA and other regulations relating to the statute, the State actively supervises the policy of ensuring that the people of the State are able to access health care services at a fair and reasonable price. However, Blue Cross is unable to point to any provision of the NHCCRA which allows MFNs with hospital providers which prevent other insurers from competing with Blue Cross–which is the challenged restraint alleged in the Complaint.

Blue Cross' argument that the Insurance Commissioner has the authority to investigate and modify Blue Cross' provider contracts is not found in the statute. There is no provision that mandates the Insurance Commissioner's review of specific contracts and review of MFN clauses before Blue Cross enters into such contracts with hospitals. The Act only allows the Insurance Commissioner to review provider *plans* and to examine the plan and determine "only if the plan contains a reimbursement arrangement and objectives for each goal provided in section 504 .." M.C.L. § 550.1506(2).

Narrowly construing the state action immunity doctrine, the Court finds that such immunity does not apply to Blue Cross' use of MFNs in the contracts with hospitals as set forth in the Complaint.

### 2. Quasi-Public Entity

Blue Cross argues that it is a "quasi-public entity." Courts have held that Blue Cross is not a public entity but a private entity and that Blue Cross, itself, has continued to so argue in other

9

cases. *Riverview Investments, Inc. v. Ottawa Cmty. Improvement Corp.,* 899 F.2d 474, 480-82 (6th Cir. 1992). Blue Cross manages its own business, controls its contracting relationship with providers and controls its substantive surpluses. M.C.L. §§ 550.1301(2), 550.1301(1), 550.1206(1). This Court in another case has accepted Blue Cross' argument that it is a private entity, not a state actor. *Loftus v. Blue Cross Blue Shield of Michigan,* 2010 WL 1139338, *4 (E.D. Mich. Mar. 24, 2010)(Hood).

### B. Abstention

Blue Cross and the City of Pontiac rely on previous filing in the government-related case on this issue.

As this Court ruled in the government-related case, Blue Cross' abstention argument under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) is not applicable because there is no available review of the MFN clauses by the Commissioner under the NHCCRA. Blue Cross has not shown that the Commissioner, in fact, reviewed the MFN clauses at issue. Given that the federal district court has exclusive jurisdiction over the Sherman Act claims, the Court finds this forum is appropriate. 15 U.S.C. § 4. This section precludes *Burford* abstention. *Andrea Theaters, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 63 (2d Cir. 1986)(Abstention in a federal antitrust case would run counter to Congress' intent in granting exclusive federal jurisdiction over these claims). The Court declines to abstain from hearing this case.

### C. Michigan Ant-Trust Statute

Blue Cross claims, as it did in the related-government case, its conduct is exempt from the Michigan Antitrust Reform Act ("MARA"), M.C.L. § 445.774. The City of Pontiac adopts the State of Michigan's argument in the related-government case in its response.

>MARA applies to entities engaged in trade or commerce in Michigan. There are exemptions:
>
>>This act shall not apply to a transaction or conduct of an authorized health maintenance corporation, health insurer, medical care corporation, or health service corporation or health care corporation when the transaction or conduct is to reduce the cost of health care and is permitted by the commissioner. This subsection shall not affect the enforcement of the federal antitrust act by federal courts or federal agencies.

M.C.L. § 445.774(6).

The exemption only applies to health insurers "when the transaction or conduct is to reduce the cost of health care and is permitted by the commissioner." *Id.* The City of Pontiac claims that Blue Cross has not sought or used MFNs to lower its own costs of obtaining hospital services. The City of Pontiac asserts that the Hospital Defendants' MFNs have caused many hospitals to: 1) raise prices to Blue Cross' competitors and all non-Blue Cross purchasers and insureds by substantial amounts, or 2) demand prices that are too high to allow competitors to compete, effectively excluding them from the market. (Comp., ¶ 10) By denying Blue Cross' competitors access to competitive hospital contracts, the City of Pontiac alleges that the MFNs have deterred or prevented competitive entry and expansion in health insurance markets in Michigan, and have increased prices for health insurance sold by Blue Cross and its competitors, and increased prices for hospital services sold to all non-Blue Cross purchasers and insureds. (Comp., ¶ 10) The City of Pontiac's Complaint has plausibly alleged that the MFNs at issue did not reduce the cost of health care. At this stage of the proceedings, Blue Cross has not shown it is exempt under M.C.L. § 445.774(6). The Court denies Blue Cross' Motion to Dismiss for this reason and for the reason set forth in its previous order.

>**D.    Sherman Act (Count I) and Michigan Anti-Trust Act (Count II)**

### 1. *Per Se* Violation or Rule-of-Reason analysis

Blue Cross argues that under the *per se* violation claim, the City of Pontiac has not stated an antitrust claim. The City of Pontiac adopts its brief on this issue filed in the Hospital Defendants' Motion to Dismiss and the briefs filed in the related-government case.

Section 1 of the Sherman Acts provides that, "[e]very contract, in combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. ..." 15 U.S.C. § 1. Section 1 prohibits every agreement in restraint of trade. *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 342 (1982). The Supreme Court has held that Congress intended to prohibit only "unreasonable" restraints of trade. *Id.* at 342-43. Generally, restraints of trade are evaluated using a "rule of reason" analysis. *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997). There are restraints of trade that are deemed unlawful *per se* because such restraints "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit." *Id.* "*Per se* treatment is appropriate '[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it.'" *Id.* (quotation omitted). The *per se* rule is applied when the restraint facially appears to be one that would always or almost always tend to restrict competition and decrease output. *In re Cardizem CD Antitrust Litigation,* 332 F.3d 896, 905 (6th Cir. 2003)(quotation omitted). The *per se* approach applies a "conclusive presumption" of illegality to certain types of agreements and no consideration is given to the intent behind the restraint, to any claimed pro-competitive justifications, or to the restraint's actual effect on competition. *Id.* (citations omitted).

Horizontal restraints are subject to the *per se* rule as recognized by the Supreme Court. *Id.*

at 906 (citing, *National College Athletic Ass'n v. Board of Regents,* 468 U.S. 85, 100 (1984)("Horizontal price fixing and output limitation are ordinarily condemned as a matter of law under an 'illegal *per se*' approach because the probability that these practices are anticompetitive is so high."))  Horizontal price fixing and market allocation are thought to be so inherently anticompetitive that each is illegal *per se* without inquiry into the harm actually caused. *Id.* (quoting *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768 (1984)).  A classic example of a *per se* violation is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.  Such concerted action is usually termed 'horizontal' restraint, which is distinguishable from combinations of persons at different levels of the market structure, manufacturers and distributors, which are termed 'vertical' restraints. *Id.* All vertical price restraints are to be judged under the rule of reason standard. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 435 (2008).

To determine whether a *per se* violation has occurred based on a horizontal restraint, the district court must examine the complaint to determine whether each of the defendants is wholly owned and controlled by a certain parent company.  Where there is a "sister" relationship between each of the defendants, these defendants are "incapable, as a matter of law, of conspiring to form a horizontal ... violation of Section 1 of the Sherman Act." *Id.*  Horizontal agreements must be shown between competing manufacturers. *Id.*

Looking at the relationship between Blue Cross and the Hospital Defendants, there is no allegation of horizontal relationship because Blue Cross and the Hospital Defendants are at different levels of the market structure–Blue Cross as the purchaser of hospital services from the Hospital Defendants.  (Comp., ¶ 6)  Blue Cross competes with for-profit and non-profit health insurers.

(Comp., ¶ 5)  There are no allegations that Blue Cross competes with the Hospital Defendants.  The relationship between Blue Cross and the Hospital Defendants is vertical.  Therefore, as to Blue Cross and the Hospital Defendants, there is no horizontal relationship and the *per se* rule does not apply to the agreements between Blue Cross and the Hospital Defendants.

In order to assess whether the MFN-Plus clauses unreasonably restrain trade, the "rule of reason" is applied.  An agreement violates the rule of reason if it "may suppress or even destroy competition," rather than promote competition. *American Needle, Inc. v. National Football League,* 130 S.Ct. 2201, 2217 n. 10 (2010)(quoting, *Board of Trade of Chicago v. United States,* 246 U.S. 231, 238 (1918)).  "To state a claim under the rule-of-reason test, a plaintiff must allege, *inter alia*, that the purportedly unlawful contract, combination or conspiracy produced adverse anticompetitive effects within relevant product and geographic markets." *Warrior Sports, Inc. v. National Collegiate Ath. Ass'n,* 623 F.3d 281, 286 (6th Cir. 2010).  In order to survive a motion to dismiss under the rule of reason test, the complaint must plausibly allege that the MFN-Plus clauses produced adverse anticompetitive effects within relevant product and geographic markets.

In its response brief to the Hospital Defendants' Motion to Dismiss, the City of Pontiac asserts that its claims are properly evaluated under the *per se* violation standard which applies to horizontal relationships.  Blue Cross replies that because the City of Pontiac elected to solely base its claims on the *per se* violation standard, the City of Pontiac has failed to state an antitrust claim.  The City of Pontiac's response brief to the instant motion is thin as to any application of the rule-of-reason test.  However, the City of Pontiac points to a few allegations in the Complaint as to the relevant market for the MFN-Plus agreements.  (Comp., ¶¶ 1, 63 and 74).

      **2.**     **Product Markets**

Relevant product or geographic markets are sufficiently alleged as long as the complaint bears a "rational relation to the methodology courts prescribe to define a market." *Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001). Courts hesitate to grant motions to dismiss for failure to plead a relevant product market because market definition is a fact-intensive inquiry only after a factual inquiry into the commercial realities faced by the consumers. *Id.* at 199-200; *Eastman Kodak Co., v. Image Tech., Servs., Inc.,* 504 U.S. 451, 467 (1992). A product market consists of products that have "reasonable interchangeability." *Spirit Airlines, Inc. v. Northwest Airlines, Inc.,* 431 F.3d 917, 933 (6th Cir. 2005).

At this motion to dismiss stage and reviewing the Complaint only, the Court finds that the City of Pontiac has pled the relevant market for the MFN-Plus agreements as the "market for hospital services." (Comp., ¶¶ 1, 63 and 74) As noted by the City of Pontiac, Blue Cross noted that the relevant market for the MFN-Plus agreements is the market for hospital services. (Blue Cross Motion, pp. 3, 16)

### 5. Anticompetitive Effects

Blue Cross asserts that the Complaint fails to provide any factual allegations that the MFN-Plus clauses harmed competition. Blue Cross acknowledges the one competitor, Priority, which was alleged to have been deterred from entering the geographic market. However, there is no allegation that this prevented competition, nor an allegation that market prices rose. One single competitor is not an antitrust concern. *See Indeck Energy Servs. v. Consumers Energy Co.,* 250 F.3d 972, 977 (6th Cir. 2001). The City of Pontiac does not address this issue in its response brief, nor does it point to any allegations in its Complaint which may allege facts to support this claim.

In light of the City of Pontiac's reliance on the *per se* violation analysis, which this Court

rejected, and the bare allegations, if any, of factual allegations under the rule-of-reason analysis, the Court finds that the City of Pontiac fails to state a plausible claim under the Sherman Act and the Michigan[3] antitrust laws.

### E. Unjust Enrichment

Blue Cross argues the City of PONTIAC cannot state a claim of unjust enrichment since it received no benefits from the City of Pontiac. The City of PONTIAC offered to dismiss this claim without prejudice to streamline a complex case, although it argues that the case, *In re Cardizem CD Antitrust Litigation,* 105 F.Supp.2d 618, 671 (E.D. Mich. 2000) supports its unjust enrichment claim since there is no requirement that a direct payment or privity is required.

The basis for a claim of unjust enrichment follows from a contract implied-in-law, an implied contract imposed by fiction of law intended to enable justice to be accomplished even in cases where no contract was intended. *Williams v. Morgan Stanley & Co., Inc.,* 2009 WL 799162 *6 (E.D. Mich. Mar. 24, 2009)(unpublished)(citing *Cascaden v. Magryta,* 247 Mich. 267 (1929)). Michigan law will sustain a claim of unjust enrichment when the plaintiff is able to establish the requisite elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant." *Sweet Air Inv., Inc. v. Kenney,* 275 Mich. App. 492, 504 (2007). "There is no claim for unjust enrichment when there exists a valid contract covering the same subject matter." *Iverson Industries, Inc. v. Metal Management Ohio, Inc.*, 525 F. Supp. 2d 911 (E.D. Mich. 2007). In *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 199-200 (2006), the Michigan Supreme Court stated that "we perceive no reason why a

---

[3] Michigan's antitrust laws are based on the federal antitrsut law and interpreted in the same manner. M.C.L. § 445.784(2); *Partner & Partner, Inc. v. ExxonMobil Oil Corp.,* 2008 WL 896052 (E.D. Mich. 31, 2008)

plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a quantum meruit [unjust enrichment] claim against a *different* defendant with whom no express contract exists." *Id.* (italics added). A defendant's mere receipt of a benefit belonging to the plaintiff is not enough to state a claim for unjust enrichment; the circumstances must make it unjust for the defendant to retain the benefit. *In re Estate of McCallum,* 153 Mich. App. 328, 335 (1986)("A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.")

The City of Pontiac alleges that Blue Cross is jointly and severally liable with each Hospital Defendant as a co-conspirator, but does not allege that the City of Pontiac or other non-Blue Cross purchasers actually paid Blue Cross for the price-fixed hospital services at issue. The City of Pontiac fails to allege an unjust enrichment claim against Blue Cross since it admits that it had a contract with Blue Cross for third-party claims administration. Apart from what it paid Blue Cross as an administrator, the City of Pontiac does not allege any other benefits it paid Blue Cross. The existence of an express contract between Blue Cross and the City of PONTIAC precludes an unjust enrichment claim.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Blue Cross Blue Shield of Michigan's Motion to Dismiss (**Doc. No. 145, filed 6/6/2011**) is GRANTED.

IT IS FURTHER ORDERED that the Complaint is DISMISSED as to Blue Cross Blue

Shield of Michigan.

IT IS FURTHER ORDERED that the Motion for Leave to File the Affidavit of Kenneth M. Mogill **(Doc. No. 159, 10/18/2011)** is MOOT in this case.


                S/Denise Page Hood
                Denise Page Hood
                United States District Judge

Dated: March 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2012, by electronic and/or ordinary mail.

                S/LaShawn R. Saulsberry
                Case Manager